The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Michael A. WILLIAMS, Defendant–
Appellant.

No. 99CA1178.

Colorado Court of Appeals,
Div. III.

Feb. 15, 2001.

As Modified on Denial of
Rehearing April 12, 2001.

Certiorari Denied Nov. 13, 2001. *

* Justice COATS does not participate.

**1188**

Ken Salazar, Attorney General, Kathleen M. Byrne, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Christopher H. Gehring, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge NEY.

Defendant, Michael A. Williams, appeals from the judgment of conviction of escape from an Intensive Supervision Program, a class 3 felony, pursuant to §§ 17–27.5–104 and 18–8–208(2), C.R.S.2000. We affirm the conviction, but remand for clarification of defendant's sentence.

Defendant was placed on mandatory parole for three years on May 27, 1998. Pursuant to § 17–27.5–106, C.R.S.2000, the parole board entered into a Parole Agreement/Order with defendant, which required that defendant participate in an Intensive Supervision Program (ISP) for 180 days.

The Parole Agreement/Order provided that:

Parolee will abide by all conditions of parole set forth in this agreement and any additional conditions and directives set forth by Parole Officer, consistent with the laws of the State of Colorado.

The agreement also required that defendant not leave the area to which he was paroled without the permission of his parole officer and that he comply with the directives of his parole officer at all times.

At his initial meeting with his parole officer, defendant signed and initialed a document setting forth the directives of the ISP. The directives required him to be at his residence of record each day during the curfew hours of 7:00 a.m. to 6:00 p.m., Monday through Friday, and 12:00 p.m. to 6:00 p.m., Saturday and Sunday. Additionally, defendant was restricted, when not confined to his residence, to the Denver Metropolitan Area. Finally, defendant was to be monitored by electronic surveillance equipment.

At that meeting, defendant also signed a document in which he indicated that his parole officer had apprised him of § 17–27.5–104. The document also stated that:

I therefore clearly understand that should I leave my designated residence of record for my ISP confinement for an excess of 24 hours, I am therefore, liable for prosecution, conviction and punishment for Felony Escape....

On June 29, 1998, electronic monitoring revealed that defendant had been away from his residence of record since June 26, 1998, at 9:27 p.m. The next day, defendant called his parole officer, admitted that he had been away from his residence, and agreed to come to the parole office. Defendant did not appear, and his parole was revoked. Defendant was subsequently convicted of escape from ISP. This appeal followed.

I.

Defendant's primary contention on appeal is based on the definition of "extended limits on his confinement," as that phrase is used in § 17–27.5–104. He argues that there was insufficient evidence that he failed to remain within the extended limits of his confinement. We disagree.

Section 17–27.5–104 provides:

**Escape from custody.** If an offender fails to remain within the extended limits on his

confinement as established under the intensive supervision program, ... he shall be deemed to have escaped from custody and shall, upon conviction thereof, be punished as provided in section 18–8–208, C.R.S.

Defendant claims that neither the statute nor case law has defined the phrase "extended limits on his confinement." He maintains that since the plain and ordinary meaning of the word "extended" is "expanded," the unambiguous meaning of the "extended limits on his confinement" in this case is the ISP directive that he remain within the Denver Metropolitan Area. Because the prosecution only presented evidence that defendant had left his residence for a 24–hour period, and not that he had left the Denver Metropolitan Area, he reasons that the evidence was insufficient to sustain his conviction.

The trial court ruled that defendant's "extended limits on his confinement" consisted of his electronic monitoring at all times, his residence for the designated curfew hours, and the Denver Metropolitan Area at all other times. Defendant argues that this interpretation is incorrect because it narrows, as opposed to extends, the limits on his confinement.

Although we do not agree with defendant's characterization of the phrase "extended limits on his confinement," we do not reach the issue of its definition because here defendant was specifically advised, and acknowledged in writing, that violating the terms of his residential curfew would subject him to prosecution under § 17–27.5–104. Therefore, defendant's curfew directive constituted an extended limitation on his confinement under these facts.

Because the evidence is undisputed that defendant was not at his residence from June 26, 1998, until June 29, 1998, his conviction for escape is thus supported by sufficient evidence.

## II.

■ Defendant also argues that his conviction violated his right to equal protection of the laws because there is no rational basis for determining which mandatory parolees are subject to ISP and, as such, are punished more severely than other similarly situated parolees. We find no equal protection violation.

■ Equal protection of the laws assures that those who are similarly situated will be afforded similar treatment. U.S. Const. amend. XIV; Colo. Const. art. II, § 25; *People v. Alexander,* 797 P.2d 1250 (Colo.1990). In the absence of a statutory infringement on a fundamental right or the creation of a suspect classification, equal protection of the laws is satisfied if the statutory classification has a reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest. *People v. Alexander, supra.*

■ The party challenging the statutory classification bears the burden of proving beyond a reasonable doubt that the classification is unreasonable or unrelated to any legitimate governmental objective. *People v. Alexander, supra.*

On appeal, defendant argues that § 17–27.5–106 provides no standards or criteria to govern the determination of which mandatory parolees should be subject to ISP and which should be placed on regular (or non-ISP) parole and, therefore, the statute violates equal protection. We disagree.

The criteria for selecting offenders for transfer into an ISP include, but are not limited to, the following:

(a) The frequency, severity, and recency of disciplinary actions against the offender;

(b) The offender's escape history, if any;

(c) Whether the offender has functioned at a high level of responsibility in a community corrections program, if applicable;

(d) Whether the offender will have adequate means of support and suitable housing in the community; and

(e) The nature of the offense for which the offender has been incarcerated.

Section 17–27.5–102(3), C.R.S.2000. Section 17–27.5–106, which was enacted after ISPs were created for discretionary parolees, provides:

**Authority of state board of parole to utilize intensive supervision program.** An offender who is granted parole or whose parole is modified may be required by the state board of parole, as a condition of such parole, to participate in an intensive supervision program as *defined by this article* . . . . (emphasis added)

In light of the phrase "as defined by this article," we conclude that the General Assembly intended § 17–27.5–106 to incorporate the standards and criteria set forth in § 17–27.5–102(3) for the parole board to consider when selecting parolees for placement in an ISP.

Thus, to effectuate this intent, we conclude that § 17–27.5–106 serves to modify § 17–27.5–102 to apply to all parolees described in § 17–27.5–102, as well as parolees subject to placement in an ISP as set forth in § 17–27.5–106. *See People v. Farbes,* 973 P.2d 704 (Colo.App.1998) (our task is to ascertain and give effect to the intent of the General Assembly).

Under this statutory scheme, the parole board is given discretionary power, based on an analysis of factors set forth in § 17–27.5–102(3), to determine which mandatory parolees are to participate in an ISP. The purpose of these factors is to provide guidance to the parole board in exercising its discretion, and implicit in this purpose is a recognition that not all mandatory parolees should be placed in an ISP. Thus, the statutory scheme is reasonably related to the legitimate governmental interest of supervising at-risk mandatory parolees. As such, we find no equal protection violation. *See People v. Alexander, supra.*

### III.

■ We decline to address several of defendant's contentions on appeal because the record reveals that they were not first raised in the trial court. Those contentions include: 1) that § 17–27.5–104 violates the Colorado Constitution because the title of House Bill 89–1067, *see* Colo. Sess. Laws 1989, ch. 157 at 883–885, failed to express the statute's subject matter and, thus, did not provide notice that it was creating a new felony offense; 2)

that § 17–27.5–104 applies to discretionary parolees, but not to mandatory parolees such as himself; 3) that once paroled, a mandatory parolee has discharged his prison sentence and, in light of §§ 18–1–105(1)(a)(V)(D) and 17–22.5–403, C.R.S.2000, the parole statutes do not contemplate that a mandatory parolee can "escape"; and 4) that his conviction for felony escape is barred by the prohibition against double jeopardy because his conviction and his parole revocation contain the same elements.

Defendant asserts that these contentions concern the question of whether he "actually committed a crime," which he alleges is a jurisdictional issue. Defendant does not refer us to any authority to support this claim. He also asserts that his new arguments raise questions of law, which we review *de novo,* and that fundamental fairness and sound judicial economy require this court to address and decide all of his contentions at this time. Defendant also requests that we review his new contentions for plain error. We are not persuaded by any of these arguments.

Because these issues were not raised in the trial court, we decline to consider them on appeal. *See People v. Cagle,* 751 P.2d 614 (Colo.1988) (constitutional issues not raised in the trial court will not be considered when raised for the first time on appeal); *People v. Collie,* 995 P.2d 765 (Colo.App.1999).

### IV.

■ Defendant also argues that the separation of powers and non-delegation doctrines have been violated in that the parole officer is given, as a member of the executive branch, "exclusive discretion and authority" to define the crime of felony escape under § 17–27.5–104.

We Conclude That Defendant Failed To Sufficiently Raise This Constitutional argument in the trial court. Defendant's counsel argued separation of powers in two contents, neither of which articulated the assertion raised fir the first time here.

During argument on defendant's motion for directed verdict, defendant argued separation of powers in relation to his contention that the statute violated due process by fail-

ing to provide adequate notice of the law. Subsequently, after trial and in anticipation of sentencing, defendant argued that by applying the sentencing ranges set forth in § 18-8-208, the judicial branch would be violating separation of powers by "usurping a legislative function to define the penalty and class of felony."

Thus, we conclude that neither of the arguments made to the trial court adequately raised the separation of powers argument now made on appeal. And, because the separation of powers argument now asserted was neither raised by defendant nor ruled upon by the trial court, we decline to address it. See *People v. Mershon*, 874 P.2d 1025 (Colo. 1994) (declining to address constitutional arguments that were only raised in a cursory fashion before the trial court).

## V.

■ Finally, defendant contends that the trial court committed reversible error when it concluded that it was required to impose a consecutive sentence for his escape conviction. We find no error, but remand with directions for the trial court to clarify defendant's sentence.

At the sentencing hearing, defense counsel acknowledged that any sentence would have "to be consecutive to [defendant's] other sentences." At that time, at least three different pending criminal actions were mentioned during the hearing: a menacing charge, a charge of intimidating a witness, and possible charges related to an incident of domestic violence. The court ruled that "[t]here is a mandatory minimum consecutive that is part of a class 3 conviction [for escape]." As such, the court sentenced defendant to "six years consecutive to the other sentences that he is presently serving" and five years of mandatory parole. •

The substantive offense of escape, as defined in § 17–27.5–104, provides that an offender shall be punished as provided in § 18–8–208. The requirement of consecutive sentencing is set forth in § 18–8–209, C.R.S. 2000, which provides that any sentence imposed following a conviction of an offense under several sections, including escape under § 18–8–208, "shall run consecutively and not concurrently with any sentence which the

offender was serving at the time of the conduct prohibited by those sections."

Pursuant to that statutory scheme, the trial court did not err in ordering that defendant's escape sentence be served consecutively rather than concurrently. Moreover, we are not persuaded by defendant's argument that § 18–8–209 is not applicable because § 17–27.5–104 does not specifically mention that section.

However, " § 18–8–209 clearly and unambiguously provides that the sentence imposed for an escape conviction must be consecutive only to any sentence the defendant was serving at the time of the escape, and not to a sentence subsequently imposed." *People v. Eurioste*, 12 P.3d 847, 849 (Colo.App.2000).

Thus, we remand this cause for a determination as to whether defendant was serving a sentence at the time of his escape. If the court finds that he was serving a sentence at the time of his escape, then his 6–year escape sentence must be served consecutively to that sentence. If not, it is within the court's discretion to sentence defendant consecutively or concurrently to any subsequently imposed sentence. *See People v. Wieghard*, 743 P.2d 977 (Colo.App.1987).

Judgment affirmed, and the cause is remanded for clarification of defendant's sentence consistent with this opinion.

MARQUEZ and RULAND, JJ., concur.