The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Christopher PEREA, Defendant–Appellant.

No. 00CA1473.

Colorado Court of Appeals, Div. V.

Aug. 1, 2002.

Rehearing Denied Sept. 19, 2002.*

Certiorari Denied July 28, 2003.**

* Marques, J., would GRANT.

** Justice COATS does not participate.

Ken Salazar, Attorney General, John J. Krause, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Christopher Perea, appeals from a judgment of conviction of escape in violation of §§ 17–27.5–104 and 18–8–208(2), C.R.S.2001. We affirm the conviction, vacate the sentence, and remand for resentencing.

In August 1999, defendant, after release from incarceration, began serving a period of mandatory parole in an intensive supervision program (ISP). Defendant's parole officer informed him of the conditions of parole and the ISP directives, including the assigned curfew and electronic monitoring with an ankle bracelet, as well as the possible consequences of violations of the conditions and directives. Defendant initialed each ISP directive and signed the document.

On September 14, 1999, defendant's monitor showed that he had violated his curfew. The next day, defendant failed to appear for a scheduled appointment with his parole officer, and the electronic monitor indicated that the transmitter was unplugged. On September 20, when parole officers arrived at defendant's residence to investigate, defendant was present, but fled. The officers found that the ankle bracelet had been cut and the transmitter unplugged. Defendant was arrested two weeks later and convicted of felony escape after a trial to the court.

## I.

■ Defendant argues that the State Board of Parole was not authorized to place him in an ISP pursuant to § 17–27.5–106, C.R.S.2001, because he was on mandatory parole and therefore not an offender who had been "granted parole" as that term is used in the statute authorizing ISP. We disagree.

In *People v. Garcia*, 64 P.3d 857, 2002 WL 58926 (Colo.App. No. 99CA2360, Jan. 17, 2002), another division of this court expressly rejected this argument. We are persuaded by the analysis and rationale of *Garcia* and, therefore, decline to depart from that holding.

## II.

■ Defendant contends that his conviction was invalid because § 17–27.5–104 precedes § 17–27.5–106 and therefore does not apply to the latter statute. We know of no such rule of statutory construction and thus reject the argument.

■ Courts must read and consider the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts. *See Martin v. People*, 27 P.3d 846 (Colo.2001).

Section 17–27.5–106 authorizes the use of ISPs. Section 17–27.5–104 defines escape from custody in the context of ISPs:

If an offender *fails to remain within the extended limits on his confinement as established under the intensive supervision program*, or, having been ordered by the parole board, the executive director, or the administrator of the program to return to the correctional institution, neglects or fails to do so, he shall be deemed to have escaped from custody and shall, upon conviction thereof, be punished as provided in section 18–8–208, C.R.S. (emphasis added)

In light of the explicit reference to ISPs in § 17–27.5–104, this section plainly applies to § 17–27.5–106 and thus to defendant here.

## III.

Defendant contends that there was insufficient evidence that he failed to remain within "the extended limits on his confinement" as

that phrase is used in § 17–27.5–104. We disagree.

## A.

Section 17–27.5–104 provides that "[I]f an offender fails to remain within the extended limits on his confinement as established under the intensive supervision program ... he shall be deemed to have escaped from custody."

■ Defendant argues that neither the statute nor case law has defined the phrase "extended limits on his confinement." He maintains that because the plain and ordinary meaning of the word "extended" is "expanded," or "extended limits" means "outer limits," the phrase here unambiguously refers to the ISP directive that he remain within the Denver Metropolitan Area and the state of Colorado. We disagree.

■ In *People v. Williams*, 33 P.3d 1187 (Colo.App.2001), a division of this court disagreed with an identical characterization of the phrase "extended limits on his confinement." Although declining to reach the issue of the definition of the phrase, the division concluded that a curfew directive constituted an extended limitation on that defendant's confinement. In *People v. Lucero*, 654 P.2d 835 (Colo.1982), the supreme court held that an offender who was temporarily released from a correctional facility on a day pass remained in constructive custody, and the pass merely extended the limits of confinement from the facility to those granted by the pass. In light of these decisions, it is clear that the phrase "extended limits on his confinement" in § 17–27.5–104 refers to geographic and time limits placed on the offender beyond those imposed by incarceration in a correctional facility.

The trial court here correctly convicted defendant based on his violation of the reduced geographical limits imposed by the curfew directive, which his parole officer read and explained to him and which he signed. Thus, defendant knew of and understood the geographical limit imposed on him by the curfew.

## B.

■ In a parallel argument, defendant argues that there was insufficient evidence to support the trial court's conclusion that he left his residence during the curfew period. He asserts that the prosecution presented evidence only that his monitor ceased to function and transmit signals from his ankle bracelet over the residential phone line because it was unplugged. We are not persuaded.

■ This case was tried to the court. It was free to consider and give equal weight to both direct and circumstantial evidence; to judge the sufficiency, probative effect, and weight of the evidence; and to draw any reasonable inferences and conclusions from the evidence. We cannot disturb its factual findings if they are supported by the record, as they are here. *See People v. Stark*, 691 P.2d 334 (Colo.1984); *People v. Gagnon*, 997 P.2d 1278 (Colo.App.1999).

The trial court found, "[T]he idea that [defendant] would cut off his ankle bracelet, disconnect the box, and fail to report to his parole officer, yet all the while continued to remain in the house ... doesn't make any sense at all."

The evidence established that defendant was out of range of the transmission box in his residence for brief periods during curfew hours on September 14 such that the transmission box could not record his proximity to the residence; the transmission box was disconnected as of September 15; defendant failed to report to his parole officer as required on September 15 and thereafter; when officers arrived at the residence on September 20, defendant fled, and the officers discovered that the ankle bracelet had been cut off.

This evidence supports the reasonable inference that defendant violated the curfew and thus the "extended limits on his confinement," *see People v. Williams, supra,* so we may not disturb the trial court's findings of fact.

## C.

Defendant also argues that if the phrase "extended limits on his confinement" does

not mean the Denver Metropolitan Area, then the statute violates due process because it is unconstitutionally vague. We disagree.

Statutes are presumed to be constitutional, and the party challenging a statute bears the burden of establishing unconstitutionality beyond a reasonable doubt. *See People v. Janousek*, 871 P.2d 1189 (Colo. 1994). When reviewing a challenge based on vagueness, the court must construe the statute to uphold its constitutionality whenever a reasonable and practical construction may be applied. *See People v. Longoria*, 862 P.2d ·266 (Colo.1993); *see also People v. Hickman*, 988 P.2d 628 (Colo.1999) (statute invalidated for vagueness if no limiting construction consistent with legislature's intent will preserve its constitutionality).

A law violates due process and is void for vagueness where its prohibitions are not clearly defined. Vague laws offend due process because they fail to give fair notice of the conduct prohibited and do not supply adequate standards to prevent arbitrary and discriminatory enforcement. *See People v. Baer*, 973 P.2d 1225 (Colo.1999); *People v. Holmes*, 959 P.2d 406 (Colo.1998).

When a statute is challenged as void for vagueness, the essential inquiry is whether the statute describes the forbidden conduct in terms so vague that persons of common intelligence cannot readily understand its meaning and application. *See People v. Longoria, supra; Watso v. Colorado Department of Social Services*, 841 P.2d 299 (Colo.1992). However, statutory standards frequently contain broad terms to ensure their applicability to varied circumstances. Generality is not the equivalent of vagueness; neither scientific nor mathematical certainty is required. A provision is not unconstitutionally vague simply because it could have been drafted with greater precision. *See Board of Education v. Wilder*, 960 P.2d 695 (Colo.1998); *Watso v. Colorado Department of Social Services, supra*.

A law is unconstitutionally vague only if it specifies no standard of conduct at all, and not if it requires a person to conform his or her conduct to an imprecise, but comprehensible normative standard. *See People*

*v. Hickman, supra; Board of Education v. Wilder, supra*. We may sustain a facial vagueness challenge only where the enactment is impermissibly vague in all of its applications. *See People v. Baer, supra*.

A person who engages in conduct that is clearly proscribed by the statute cannot complain of the vagueness of the law as applied to the conduct of others. Therefore, in evaluating a statute, a court should focus on the complainant's conduct before analyzing other hypothetical applications of the law. In other words, one to whom a statute clearly applies may not successfully challenge it for vagueness. *See Board of Education v. Wilder, supra; see also People v. Baer, supra*.

The due process requirement that a statute clearly define the prohibited conduct is not relaxed simply because the statute delegates certain decisions to an agency. In such a situation, the responsibility to promulgate clear and unambiguous standards is on the agency. *See People v. Holmes, supra*.

Here, § 17–27.5–104 specifies a standard of conduct. *See People v. Hickman, supra*. We have already concluded, with existing precedent as support, that the phrase "extended limits on his confinement" refers to limits beyond those imposed on an offender who is incarcerated in a correctional facility, a construction that comports with constitutional due process.

Section 17–27.5–102, C.R.S.2001, empowers the Department of Corrections (DOC) to establish and enforce standards and criteria for administration of ISPs, and the statute provides basic minimum guidelines in that regard. An offender is given detailed notice of the extended limits of the ISP and informed of the potential consequences of violation when he or she is released into an ISP.

Defendant has not demonstrated beyond a reasonable doubt that the DOC's ISP directives or conditions of parole are not clear and unambiguous, and thus he has not carried his burden of proof. *See People v. Holmes, supra* (agency may promulgate clear and unambiguous standards if statute delegates such authority).

Further, although the phrase "extended limits on his confinement" is sufficiently general that it could arguably extend to any ISP limit, defendant here was convicted of escape for violations of geographical limits. The "extended limits" contemplated by § 17–27.5–104 clearly pertain at a minimum to geographical limits, as evidenced by § 17–27.5–102 and the DOC's ISP directives, each of which defendant acknowledged by signature. Defendant thus was required to conform to the standard of conduct in the ISP directives confining him to specified geographical limits.

Accordingly, defendant may not successfully challenge § 17–27.5–104 for vagueness because the statute clearly applies to his violation of the geographical limits of the ISP. *See Board of Education v. Wilder, supra.*

### IV.

Defendant also argues that the application of § 17–27.5–104 violated constitutional separation of powers, equal protection, and double jeopardy principles. We are not persuaded.

#### A.

We decline to address defendant's separation of powers claim because the record reveals that it was not first raised in the trial court. *See People v. Cagle,* 751 P.2d 614 (Colo.1988) (constitutional issues not raised in trial court will not be considered when raised for the first time on appeal). Defendant relies on a sentence incorrectly quoted from his motion to dismiss in the trial court, but that sentence clearly was part of a due process argument.

Similarly, because defendant did not raise his double jeopardy claim in the trial court, we do not address it on appeal. *See People v. Cagle, supra.*

#### B.

Defendant argues that his escape conviction violated his right to equal protection of the laws because there is no rational basis for determining which mandatory parolees will be subject to an ISP and, as such, punished more severely than other similarly situated parolees. Defendant insists that § 17–27.5–106 provides no standards or criteria for determining which mandatory parolees should be subject to an ISP and which should be placed on regular parole. We disagree.

In *People v. Williams, supra,* another division of this court rejected the identical argument and concluded that § 17–27.5–106 incorporates the standards and criteria set forth in § 17–27.5–102(3), C.R.S.2001, for the parole board to consider when selecting parolees for placement in an ISP. Despite defendant's urging, we decline to depart from that decision and hence find no equal protection violation.

### V.

Defendant next contends that the trial court improperly concluded that it was required to impose a consecutive sentence pursuant to § 18–8–209, C.R.S.2001, and an additional period of parole. We disagree.

#### A.

As relevant here, § 18–8–209 provides that "[a]ny sentence imposed following conviction of an offense under [§ 18–8–208, C.R.S.2001] shall run consecutively and not concurrently with any sentence which the offender was serving at the time of the conduct prohibited by [that section]."

Mandatory parole is a statutorily prescribed sentence component that attaches automatically to any sentence involving imprisonment. *See* § 18–1–105(1)(a)(V), C.R.S. 2001; *People v. Johnson,* 13 P.3d 309 (Colo. 2000) (mandatory parole is a distinct element of sentencing, separate from the terms of imprisonment or length of sentence imposed by the trial court); *Craig v. People,* 986 P.2d 951 (Colo.1999).

Thus, because mandatory parole is one component of a sentence, defendant was still serving his sentence at the time of his escape. The trial court therefore properly imposed a mandatory consecutive sentence pursuant to § 18–8–209.

### B.

In a related argument, defendant argues that the trial court improperly imposed an additional period of mandatory parole. We disagree.

When defendant was granted mandatory parole on his sentence for his initial conviction, the balance of his sentence to incarceration was discharged. *See* § 18–1–105(1)(a)(V)(D), C.R.S.2001. Defendant violated the terms of his mandatory parole, it was revoked, and he was reincarcerated for the balance of the time remaining on his mandatory parole pursuant to § 17–22.5–403, C.R.S.2001.

Defendant's felony escape conviction required that his sentence for that offense run consecutively to his prior sentences. *See* § 18–8–208; *People v. Andrews,* 871 P.2d 1199 (Colo.1994).

Section 18–1–105(1)(a)(V)(E), C.R.S.2001, provides:

> If an offender is sentenced consecutively for the commission of two or more felony offenses pursuant to [§ 18–1–105(1)(a)(V)(A) ], the mandatory period of parole for such offender shall be the mandatory period of parole established for the highest class felony of which such offender has been convicted.

Defendant contends that § 18–1–105(1)(a)(V)(E) applies to any defendant convicted of two felonies and that he had been convicted of two felonies when convicted of escape. He therefore argues that his sentence for escape must run concurrently with the period of mandatory parole imposed on his initial conviction. We are not persuaded.

Another division of this court addressed precisely this question in *People v. Luther,* 43 P.3d 660 (Colo.App.2001) (*cert. granted* Mar. 18, 2002). That division concluded that, because the period of mandatory parole on the first conviction includes the time during which a person is reincarcerated following revocation of that parole, an offender could not be reincarcerated for the balance of the revoked mandatory parole for the first conviction before commencing a consecutive sentence that included another period of mandatory parole in light of § 18–1–105(1)(a)(V)(E).

Accordingly, the division in effect required that the initial portion of the defendant's second or consecutive sentence to incarceration be served concurrently with the first sentence until the period of mandatory parole associated with that first sentence was extinguished along with the attendant possibility of reincarceration.

However, for the reasons articulated below, we decline to follow the reasoning and analysis of *Luther* and reject the conclusion reached there.

■ In 1993, the General Assembly adopted a mandatory parole scheme for convicted felons. Colorado case law recognizes that under this scheme the prison term and parole term are separate components of the sentence, namely, a determinate period of incarceration and a predetermined period of parole. *See Martin v. People, supra.*

■ A parolee is conditionally released from actual custody, but in the contemplation of the law, still is in legal custody and constructively a prisoner of the state. The revocation of the parole results in the reincarceration of the parolee. Thus, reincarceration for a parole violation is incarceration on an already imposed sentence, and a defendant convicted of a felony committed while on parole may receive a sentence that runs consecutively to any reincarceration that may be imposed if the defendant's parole is revoked. *See People v. Lucero,* 772 P.2d 58 (Colo.1989).

■ Here, we are examining a subsection that was added to § 18–1–105 in 1993, subsequent to *People v. Lucero, supra.* We must presume that, when the General Assembly legislates in a certain area of law, it does so with awareness of the judicial precedent in that area. *See Griego v. People,* 19 P.3d 1 (Colo.2001); *Cooper v. People* 973 P.2d 1234 (Colo.1999). We also presume that an amendment does not change existing law further than is expressly declared or necessarily implied. *See People in Interest of E.E.A. v. J.M.,* 854 P.2d 1346 (Colo.App. 1992). We therefore presume that the legislature was aware of *People v. Lucero, supra,* when it added § 18–1–105(1)(a)(V)(E).

Yet, § 18–1–105(1)(a)(V)(E) does not expressly address how mandatory parole is imposed on an offender who is reincarcerated after conviction for escape from mandatory parole. Therefore, to avoid changing the law further than is expressly declared or necessarily implied, we decline to apply the statute when an offender is sentenced for the commission of a felony while serving mandatory parole as part of an already imposed sentence for a prior felony.

Mandatory parole is required, "at least in part, to insure the post-incarceration supervision of offenders who were not offered, or chose not to accept, parole release prior to the completion of their entire sentence to incarceration." *Martin v. People, supra,* 27 P.3d at 864 (Coats, J., dissenting). The term of mandatory parole does not even commence until the sentence of incarceration has been fully discharged. *See* §§ 17–22.5–403(7), 18–1–105(1)(a)(V)(B), C.R.S.2001; Colo. Sess. Laws 1993, ch. 322, § 18–1–105(1)(a)(V)(D) at 1982–83; *People v. Barth,* 981 P.2d 1102 (Colo.App.1999).

There is a distinct difference between the mandatory parole period and the period of reincarceration following violation of the conditions of parole. Indeed, when a parolee is reincarcerated following a parole violation, his or her parole is considered to be extinguished. *See, e.g.,* § 17–2–103, C.R.S. 2001; *Rather v. Suthers,* 973 P.2d 1264 (Colo. 1999); *People v. Williams, supra; see also People v. Luther, supra,* 43 P.3d at 662; *Black's Law Dictionary* 1321 (7th ed.1999) (defining "revocation"). Thus, once parole is revoked, it ceases to exist. The offender no longer is serving a period of parole, but instead is serving a penalty period of confinement for the parole violation. *See Martin v. People, supra.*

Consequently, when a defendant's mandatory parole is revoked, that defendant is no longer serving mandatory parole, but rather another period of incarceration. As such, the imposition of a consecutive sentence plus another period of mandatory parole for escape does not violate § 18–1–105(1)(a)(V)(E) because the mandatory period of parole from the first conviction has been extinguished by the parole revocation.

Further, the interpretation in *Luther* rewards a felon who is convicted of a subsequent felony committed while on mandatory parole by effectively commuting the reincarceration penalty for a parole violation, which in our view is not an intended result. The *Luther* interpretation robs the reincarceration following a parole violation of its deterrent effect, an important tool for successfully reintegrating offenders into the community consistently with the needs of public safety, and thus *Luther,* in our view, conflicts with the purposes of parole. *See People v. McCullough,* 6 P.3d 774 (Colo.2000).

The division in *Luther* concluded that the circumstances there, and here, were similar to the circumstances in *Dawson v. People,* 30 P.3d 213 (Colo.2001), which dealt with the adequacy of the advisement given the defendant concerning mandatory parole. We disagree with that conclusion.

In *Dawson,* the defendant was initially sentenced to community corrections for a term of eight years, escaped, and was resentenced to eight years in the DOC together with five years of mandatory parole. Having also pleaded guilty to attempted escape, he was sentenced to a consecutive sentence of three years plus three years of mandatory parole. The defendant was not advised of mandatory parole with respect to the escape conviction and was not advised as to the length of mandatory parole on the first conviction. However, the defendant was advised that a sentence would be followed by a period of parole. A three-justice majority (two dissenting and two not participating) concluded that both advisements were deficient, but held that the errors were harmless because the defendant had been advised that he faced combined sentences totaling twenty-four years and received only eleven years plus three years of mandatory parole. It is not apparent that the application of § 18–1–105(1)(a)(V)(E) was an issue in *Dawson.* In a footnote, however, the court indicated that these sentences did not violate § 18–1–105(1)(a)(V)(E), because "[e]ven though the sentences were consecutive, the period of parole is concurrent." *Dawson v. People,*

*supra*, 30 P.3d at 217 n. 3. *Dawson* is distinguishable because, unlike here, there the defendant had not commenced serving the mandatory parole associated with the first sentence which was then revoked, thereby discharging it.

We therefore find no error in defendant's sentence including a period of mandatory parole for his escape conviction.

## VI.

■ Finally, defendant contends that he was denied his right to allocution prior to sentencing because the court did not explicitly afford him the opportunity to make a statement on his own behalf, as required by § 16–11–102(5), C.R.S.2001, and Crim. P. 32(b). We agree.

To afford a defendant the opportunity to make a statement on his or her behalf, the trial court must address the defendant in a manner that leaves no doubt that the defendant is personally invited to speak before sentencing. *See People v. Marquantte*, 923 P.2d 180 (Colo.App.1995).

■ Here, immediately after witness testimony urging that the court impose the maximum sentence, the court asked whether there was "[a]ny response from the defendant." Defense counsel briefly responded. Based on this record, we cannot conclude that the court's question left no doubt that defendant was personally invited to speak, rather than merely suggested that defense counsel could respond to the testimony if he chose to do so. Thus, the sentence cannot stand, and the matter must be remanded for resentencing. *See People v. Garcia*, 752 P.2d 570 (Colo.1988).

Accordingly, the judgment is affirmed, the sentence is vacated, and the case is remanded for resentencing.

Judge NIETO concurs.

Judge MARQUEZ concurs in part and dissents in part.

Judge MARQUEZ concurring in part and dissenting in part.

While I concur with the remainder of the majority opinion, for the reasons set forth in *People v. Luther*, 43 P.3d 660 (Colo.App. 2001) (*cert. granted* Mar. 18, 2002), I respectfully dissent from part V.B. Thus, I would remand for correction of the mittimus to reflect that the periods of parole are concurrent.