**Terry TOWNSEND, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 09SC652.

Supreme Court of Colorado, En Banc.

May 31, 2011.

Rehearing Denied June 20, 2011.*

---

* Chief Justice Bender and Justice Martinez would     grant the Petition.

Douglas K. Wilson, Public Defender, Elizabeth Griffin, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

Petitioner Terry Townsend appeals the judgment of the court of appeals affirming his conviction for escape by means of failing to remain within the extended terms of his confinement as established under his participation in an intensive supervision program ("ISP") as a condition of his parole. We agree with the court of appeals that the jury instructions issued by the trial court did not include any reversible error and that the ISP escape statute, section 17–27.5–104, C.R.S. (2010), is not unconstitutionally vague as applied to Townsend. We also conclude that Townsend waived his argument that the statute violates the separation of powers and nondelegation doctrines of the Colorado Constitution. Accordingly, we affirm the judgment of the court of appeals.

## I. Facts and Procedural Posture

The Colorado State Board of Parole placed Townsend on parole for one year starting November 5, 2004. Townsend's parole agreement required that he serve 180 days of his parole in an ISP under article 17–27.5, C.R.S. (2010).

On November 9, Townsend met with a parole officer to review his parole agreement, and signed several forms certifying, among other things, that he understood all of the conditions and directives of his parole, including required weekly meetings with his parole officer and assigned curfew hours at his residence of record, and that he understood he could be prosecuted for felony escape under sections 17–27.5–104 and 18–8–208, C.R.S. (2010), if he failed to remain within the extended limits on his confinement under the ISP. Because Townsend was homeless, he and the parole officer set his residence of record as the Denver New Genesis homeless shelter. The officer faxed New Genesis the proper paperwork to arrange payment for two weeks of housing for Townsend.

Several days later, Townsend was arrested and jailed on an unrelated charge. On November 16, Townsend's parole officer filed a complaint seeking to revoke Townsend's parole. The new charge was dropped, and at a hearing on March 3, 2005, the parole board dismissed the complaint and reinstated Townsend's parole, restarting the 180–day ISP period. Townsend verbally agreed that he understood the terms of the ISP.

After the parole board hearing, Townsend's parole officer arranged for his release from jail later that day. The officer ordered Townsend to report immediately to the parole office to review his original parole paperwork if he was released during the office's business hours. The officer alternatively ordered Townsend to report that evening to New Genesis and at 8 a.m. the next day to the parole office if he was released after business hours. Townsend signed a form certifying that he understood the requirements that he report to the parole office and/or his residence of record.

Although it is unclear when Townsend was released, he never reported either to the parole office or to New Genesis. On March 15, his parole officer filed another complaint, and on March 24, Townsend was arrested again. The People charged Townsend with class 3 felony escape under section 18–8–208(2). A jury found him guilty, and the trial court sentenced him to five years imprisonment. Townsend appealed to the court of

appeals, which affirmed his conviction. We granted Townsend's petition for certiorari review.[1]

## II.  Analysis

Townsend contends that reversal of his conviction is warranted:  (A) because the trial court's jury instructions were erroneous;  (B) because section 17–27.5–104 is unconstitutional as applied to him;  and (C) because section 17–27.5–104 violates the separation of powers and nondelegation doctrines of the Colorado Constitution.  We find these arguments unpersuasive.

### A.  Jury Instructions

■ A trial court must correctly instruct the jury on applicable law, but retains substantial discretion over the form and style of jury instructions.  *Krueger v. Ary,* 205 P.3d 1150, 1157 (Colo.2009) (citing *Jordan v. Bogner,* 844 P.2d 664, 667 (Colo.1993); *Montgomery Ward & Co. v. Kerns,* 172 Colo. 59, 63–64, 470 P.2d 34, 36–37 (1970)).  Accordingly, we review legal conclusions implicit in jury instructions de novo, *see Romero v. People,* 179 P.3d 984, 986 (Colo.2007), but review issues of form and style for an abuse of discretion, *see Krueger,* 205 P.3d at 1157.

#### 1.  Elements of Escape

■ Townsend first contends that the trial court's jury instructions failed to set forth all the elements of escape under the combined meaning of sections 18–8–208(2) and 17–27.5–104.  We disagree.

The People charged Townsend under section 18–8–208(2), which provides that "[a] person commits a class 3 felony if, while being in custody or confinement ..., he knowingly escapes from said custody or confinement."  Accordingly, the trial court instructed the jury that "[t]he elements of the crime of Escape are ... [t]hat [Townsend] ... was in custody or confinement, and

knowingly escaped from custody or confinement."

The People's specific theory of Townsend's escape rested on section 17–27.5–104, which provides that "[i]f an offender fails to remain within the extended limits on his confinement as established under the [ISP] ..., he shall be deemed to have escaped from custody and shall, upon conviction thereof, be punished as provided in section 18–8–208."  Accordingly, the trial court instructed the jury that " '[c]ustody or confinement' includes the extended limits of confinement as established under the [ISP]."

■ Read together, these instructions plainly set forth the elements of escape under sections 18–8–208(2) and 17–27.5–104: that Townsend was within the extended limits on his confinement as established under the ISP and that he knowingly escaped from those limits.  While the jury instructions did not specifically equate the term "escaped" to the statutory language of "failed to remain," the plain and ordinary definitions of the terms convey substantially the same legal meaning.  Accordingly, we reject Townsend's contention that the instructions did not set forth the elements of escape.

#### 2.  Definition of "Extended Limits of Confinement"

Townsend also argues that the trial court's definitional instruction encompassed conduct that did not rise to the level of escape under the meaning of sections 18–8–208(2) and 17–27.5–104.  In particular, Townsend contends that the instruction impermissibly allowed the jury to consider parole limitations that are not judicially recognized "extended limits on confinement" as a part of the "custody or confinement" from which he could have escaped.

Townsend first contends that the definitional instruction permitted the jury to convict him for failing to report to a residence of

---

**1.**  Specifically, we granted certiorari to review:

   1) Whether reversal is required where the jury instructions encouraged a jury verdict based on parole violations that do not constitute escape as a matter of law;

   2) Whether section 17–27.5–104, C.R.S. is unconstitutional because it is vague as applied;  and

   3) Whether section 17–27.5–104, C.R.S., is unconstitutional because it violates the separation of powers and nondelegation doctrines of the Colorado Constitution.

record despite his contentions that he was not subject to ISP when he was released from jail on March 3, 2005, and that he did not have a residence of record at that time in any case. This contention, however, is a thinly veiled attempt to challenge the court of appeals' conclusion that there was sufficient evidence that, on March 3, Townsend was on ISP according to the terms of his original parole agreement, that he was on notice of the terms, and did have a residence of record to which he failed to report. We denied certiorari review of this issue and reject Townsend's attempt to revisit it.

■ Townsend concedes that a parolee's failure to report to his residence of record constitutes escape under sections 18–8–208(2) and 17–27.5–104 in light of a long line of precedent from the court of appeals, including *People v. Sa'ra*, 117 P.3d 51, 55 (Colo. App.2004); *People v. Smith*, 77 P.3d 751, 754–56 (Colo.App.2003); *People v. Taylor*, 74 P.3d 396, 399–400 (Colo.App.2002); *People v. Perea*, 74 P.3d 326, 331 (Colo.App.2002); and *People v. Williams*, 33 P.3d 1187, 1188–89 (Colo.App.2001). Accordingly, we perceive no error in the possibility that he was convicted for escape for failing to report to his residence of record under the terms of the ISP.

■ Second, Townsend contends that the definitional instruction permitted the jury to convict him for failing to report to his parole officer and establish a residence of record as required under the terms of the ISP, failures which he concedes violate the conditions of his parole but which he contends do not rise to the level of escape under the meaning of sections 18–8–208(2) and 17–27.5–104.

■ Townsend, however, tendered the portion of the instruction that defined "extended limits of confinement" as "the geographic, time limits [sic] and *other established ISP directives* placed on the defendant

under the [ISP]" (emphasis added). Under the invited error doctrine, we will not review alleged errors in jury instructions drafted and tendered by the defense. *People v. Zapata*, 779 P.2d 1307, 1308–09 (Colo.1989). Accordingly, we decline to address whether a parolee's failure to report to his parole officer and establish a residence of record constitutes escape under the meaning of sections 18–8–208(2) and 17–27.5–104 because any error in the possibility that Townsend was convicted on that basis is attributable to his tendered jury instruction.[2]

### 3. Definition of "Escape"

■ Finally, Townsend contends that the trial court's definition of "escape" as "a continuing activity commencing with the conception of the design to escape" could have permitted the jury to convict him for merely thinking about failing to remain within the extended limits on his confinement under the ISP, rather than actually failing to do so. The People, however, alleged that Townsend escaped by failing to remain within the extended limits on his confinement, not merely by thinking about failing to remain within them. Accordingly, the error in the definition, if any, was harmless, and we need not address it further. *See Key v. People*, 715 P.2d 319, 323 (Colo.1986) (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Graham v. People*, 705 P.2d 505 (Colo.1985); *People v. Myrick*, 638 P.2d 34 (Colo.1981); *People v. Blair*, 195 Colo. 462, 579 P.2d 1133 (1978)). Moreover, because we recognize only the mere possibility of a single harmless error in one jury instruction, we find no cumulative error warranting the reversal of Townsend's conviction.

### B. The Constitutionality of Section 17–27.5–104 as Applied to Townsend's Conduct

■ Like the court of appeals, we doubt that Townsend properly preserved his as-

---

2. Townsend contends that his tender of the definition was a mistake rather than a part of his trial strategy, and urges that application of the invited error doctrine is inappropriate under this court's holding in *People v. Stewart*, 55 P.3d 107, 119 (Colo.2002). We are unpersuaded. The trial court instructed the jury on Townsend's tendered theory—that he was not subject to the original terms of the ISP when he was released from jail on March 3, 2005. It is hardly inconceivable that Townsend strategically chose to concede that the "extended limits of his confinement" included "established ISP directives" when his primary argument was that no ISP directives had been established for him.

applied constitutional challenge to section 17–27.5–104 at trial. In Townsend's motion to dismiss, he asserted that the statute was facially unconstitutional unless the term "extended limits on confinement" in the statute referred to "the Denver Metro Area" or had some other ambiguous meaning that the trial court was obliged to construe as "the Denver Metro Area." On appeal, he argued instead that the statute was unconstitutional as applied to him because he had not received timely written notice that he could be liable for escape for failing to report to his residence of record upon his release from jail on March 3, 2005. We will not consider constitutional arguments raised for the first time on appeal. *Martinez v. People*, 244 P.3d 135, 139 (Colo.2010).

Even affording Townsend the benefit of the doubt that he somehow preserved this argument, we find it unavailing because it is yet another thinly veiled attempt to revisit his argument that there was insufficient evidence to conclude that he knowingly failed to report to his residence of record. Again, the court of appeals rejected this argument, and we denied certiorari review and decline to address it further here. Accordingly, we have no premise upon which to conclude that section 17–27.5–104 is unconstitutional as applied to Townsend's actions, and will not reverse his conviction on that basis.

## C. The Constitutionality of Section 17–27.5–104 under the Separation of Powers and Nondelegation Doctrines

▇▇▇▇▇ Lastly, Townsend argues that section 17–27.5–104 violates the separation of powers and nondelegation doctrines of the Colorado Constitution by leaving the task of defining the meaning of "extended limits of confinement" to the Department of Corrections ("DOC"). We need not reach that contention, however, because Townsend waived it when he tendered a jury instruction that defined the meaning of "extended limits of confinement" to include *"other established ISP directives* placed on [Townsend] under the [ISP]" (emphasis added). By tendering that instruction, Townsend tactically conceded that section 17–27.5–104 proscribes es-

cape from limitations established by his parole officer, a DOC employee.[3] Townsend cannot retract his concession now simply because it was of constitutional dimension. *See Zapata*, 779 P.2d at 1309–10 (quoting *Patterson v. State*, 233 Ga. 724, 213 S.E.2d 612, 617–18 (1975)). Accordingly, we decline to reverse Townsend's conviction on constitutional grounds.

## III. Conclusion

Because Townsend presents no tenable basis for reversing his conviction, we affirm the judgment of the court of appeals.

Chief Justice BENDER concurs in part and dissents in part, and Justice MARTINEZ joins in the concurrence and dissent.

Chief Justice BENDER, concurring and dissenting.

Despite the disconcerting facts of Townsend's trial for felony escape, the majority affirms his conviction. Townsend was convicted of felony escape, which requires a five-year sentence to run consecutively to his revoked parole, under circumstances where: (1) he was not provided notice of which facts would constitute the new crime of felony escape as opposed to which facts would result only in parole revocation; (2) Townsend's parole officers testified that any violation of his ISP parole requirements could constitute felony escape; (3) the trial court's instructions failed to inform correctly the jury as to which kinds of ISP parole violations constitute felony escape; and (4) the prosecutor, in closing argument, repeatedly told the jury that violating any directive of the parole officer, including failing to report to meetings, constitutes the crime of escape. Hence, in my view, these cumulative errors lowered the prosecution's burden of proof and caused an injustice requiring reversal of Townsend's conviction.

For these reasons, I respectfully dissent from Part II.A. of the majority opinion but concur with the majority's discussion in Parts II.B. and II.C.

3. See discussion *supra,* note 2.

## I.

In this case, Townsend was released from incarceration, and as a condition of his parole, was required to participate in ISP for 180 days. He met with a parole officer, Wilde, who reviewed with him paperwork pertaining both to general parole and ISP. One ISP document listed eight directives that Townsend was required to comply with, including that he remain at his residence of record during assigned curfew hours, attend a weekly meeting with his parole officer, and submit to drug testing. The document included an advisement that "I understand that my failure to follow any condition contained herein . . . can lead to revocation of my parole." A second document, an escape advisement, quoted the statutory language that "[i]f an offender fails to remain within the extended limits on his confinement as established under the [ISP] . . . he shall be deemed to have escaped from custody" and recited that "should I violate this statute, I am liable . . . for Felony Escape."

Because Townsend was homeless, he and Wilde agreed that his residence of record would be the New Genesis homeless shelter. Wilde arranged for Townsend to stay at the shelter and paid for the initial cost. A few days later, Townsend was arrested for possession of drug paraphernalia, and, consequently, Townsend's parole officer filed a parole revocation complaint. Townsend remained in jail for four months before the charges were dismissed, and, after a hearing, the parole board dismissed the revocation complaint. At the hearing, Townsend's parole officer, Vaughn, asked that Townsend's 180 days of ISP be reinstated. The hearing officer agreed and notified Townsend that he remained on ISP. The hearing officer did not advise Townsend of his ISP directives, or the consequences of violating them, but merely asked whether he "understood his ISP obligations" and told him to "see your parole officer immediately upon your release to get hooked up with the ISP supervision."

After the hearing, Townsend met briefly with Vaughn. Vaughn did not go over any ISP paperwork with Townsend or advise him of any ISP directives. Instead, she gave Townsend a preprinted directive instructing him to report to her office on release from jail or, if released after hours, to report immediately to his residence of record and then report to her office at 8:00 a.m. the next morning. This directive did not name a residence of record, mention any ISP directives, or advise Townsend about escape. The document stated only, "I understand that my failure to follow directive(s) of the Community Parole Officer . . . can lead to *the revocation of parole.*" (Emphasis added). Vaughn did not arrange with New Genesis for Townsend to stay there.

Released after hours, Townsend failed to report to New Genesis that night and to his meeting with Vaughn the next day. Vaughn filed a parole revocation complaint based on both these failures. Townsend was arrested, and the prosecution charged him with escape from custody in violation of sections 17–27.5–104 and 18–8–208(2), C.R.S. (2008). Section 17–27.5–104 provides that if a parolee "fails to remain within the extended limits on his confinement as established under the [ISP] . . . he shall be deemed to have escaped from custody and . . . punished as provided in section 18–8–208, C.R.S." Section 18–8–208(2) states that "[a] person commits a class 3 felony if . . . he knowingly escapes from [ ] custody or confinement."

At trial, Townsend disputed both the fact that he knowingly violated his ISP directives and the prosecution's legal theory that a parolee escapes if he violates any of his ISP directives. As to the first point, Townsend argued that he "did not have any extended limits of his confinement established under the [ISP] . . . . [t]herefore, he could not have knowingly failed to remain in those extended limits." Within this theory, Townsend argued both that he was never on ISP, so he had no extended limits of confinement, and that, even if he were on ISP, he did not knowingly fail to remain within his extended limits because he was never told what those limits were. Townsend also disputed whether he knowingly failed to report to New Genesis the night he was released. He presented evidence that he and Vaughn never discussed his ISP conditions or agreed that New Genesis would be his residence of record; nor did Vaughn arrange for Townsend

to stay at New Genesis. Townsend did not contest that he failed to attend the scheduled meeting with Vaughn.

Townsend also disputed the prosecution's theory that he would be guilty of escape for violating any ISP directive. Supporting the prosecution's theory, Wilde and Vaughn testified that a parolee violates his "extended limits on confinement," and thus is subject to an escape charge, when he violates any ISP directive, including failure to attend office visits and drug testing. Explaining the escape advisement, Wilde testified, over Townsend's objection, that parolees are "subject to a new criminal escape charge" if "they decide not to complete the ISP program ... *they don't report to the office for their office visits, they stop dropping UAs.*" (Emphasis added). Wilde stated that "extended limits on confinement" means that "[i]f you don't do [the directives] you're subject to escape."

Similarly, Vaughn testified that she can request an escape charge for "numerous reasons," including "if they don't report to our office immediately upon release from prison." The judge allowed, over Townsend's objection, Vaughn to answer a juror's legal question about whether it would have constituted escape if Townsend had failed to report to Wilde to go over the initial ISP paperwork, before he was ever advised of any ISP requirements. Vaughn answered, "Yes."

In closing argument, over Townsend's objection, the prosecutor repeatedly urged the jury to convict Townsend of escape for violating any of the ISP directives. The prosecutor asserted that the "parole directives in [ISP] clearly define[ ] his conduct.... He had to live by these rules and regulations." The prosecutor continued, "Extended limits of confinement. What does that include? These rules and regulations." Townsend again objected, and the court overruled, stating, "Encompasses the directives there. Overruled." The prosecutor then argued that Townsend knowingly violated the ISP "rules and regulations." The prosecutor stated:

> He decided not to go to his residence of record, *he decided not to report to his parole officer, he decided not to follow any of these directives* even though he was

advised that he was going to be reinstated on his ISP and that he was still on parole. (Emphasis added). Finally, in rebuttal, the prosecutor again stressed that violating any of the ISP directives constitutes escape. She asserted, "You can't separate out the directives.... His extended limits of confinement include ... his residence of record, curfew, appearing when he's supposed to appear, reporting." The prosecutor concluded, "He didn't report. He didn't report to New Genesis and *he didn't report to his parole officer. I'd ask you to follow the law and find him guilty.*" (Emphasis added).

The jury instructions the trial court provided reinforced the prosecutor's argument that violating any ISP directive constituted escape. Instruction 14 stated that " '[e]xtended limits of confinement' means the geographic, time limits, *and other established ISP directives placed on the defendant under the [ISP].*" (Emphasis added). Although defense counsel tendered this instruction, Townsend argues defense counsel mistakenly included "other established ISP directives" in the definition of "extended limits of confinement," because, throughout the trial, counsel objected to such an expansive definition.

Instruction 14 also defined "escape" as "a continuing activity *commencing with the conception of the design to escape* and continuing until the escapee is returned to custody or the attempt to escape is thwarted or abandoned." (Emphasis added). Townsend objected to this definition.

The jury convicted Townsend of escape, and the trial court sentenced him to five years in prison, to run consecutively to his revoked parole.

## II.

The central legal issue of this case is which parole violations constitute a "fail[ure] to remain within the extended limits on [ ] confinement as established under the [ISP]," therefore subjecting the parolee to conviction for escape. § 17–27.5–104. The majority does not address this crucial issue. First, the majority focuses on the elements of escape under section 18–8–208(2) rather than the key language of "extended limits on con-

finement" in section 17–27.5–104. Maj. op. at 1111. Second, it asserts that the erroneous definition of "extended limits on confinement" in Jury Instruction 14 was invited error.[1] *Id.* at 1112. And, third, the majority reasons that "we perceive no error in the possibility that [Townsend] was convicted for escape for failing to report to his residence of record" because Townsend concedes that this ISP violation would constitute escape. *Id.* at 1112. This overlooks the fact that the jury could have convicted Townsend based on his admission that he knowingly failed to meet with his parole officer, which, in my view, does not constitute escape as a matter of law.

I believe "extended limits on confinement" is properly defined as "geographic and time limits placed on the offender beyond those imposed by incarceration in a correctional facility." *People v. Perea,* 74 P.3d 326, 331 (Colo.App.2002). This definition comports with Colorado precedent, the Department of Corrections' (DOC) interpretation of the language, and other jurisdictions' interpretations of similar statutes.

First, the court of appeals in *Perea* concluded that "extended limits on confinement" "refers to geographic and time limits placed on the offender beyond those imposed by incarceration in a correctional facility." *Id.* The court of appeals based its conclusion on *People v. Lucero,* where we implied that an offender escaped from custody when he failed to return to a work release facility after he was given a 10–hour pass. 654 P.2d 835, 836 (Colo.1982). We reasoned that a temporary pass merely extends "the limits of [custodial] confinement" beyond the work release facility during the period of time that the offender was allowed the pass. *Id.* This logic applies equally to an ISP program that, like a work release facility, is an extension of our state's traditional correctional facilities. *See id.*; § 17–27.5–101, C.R.S. (2010).

Second, this definition comports with the DOC's understanding of "extended limits on

confinement" embodied in its administrative regulations, which define "extended limits on confinement" as the "[a]pproved residence of record by the Department of Corrections." Colo. Dep't Corrections, Admin. Reg. 250–22 (2010) (available at http://www.doc.state.co.us/sites/default/files/ar/0250_22_1.pdf). Older DOC regulations similarly define the phrase and have always limited the definition to violations of geographic or time limitations. *See* DOC, Admin Regs. 250–1 (1990) and (1999) (defining escape as when a parolee fails to remain within the defined areas of his confinement as established under the ISP or fails to return to his approved residence at the stipulated time).

Other jurisdictions that have grappled with similar statutory language construe "extended limits" as those limits that extend beyond the walls of the prison where the offender would otherwise be but for the particular program that allows them to live or work outside of the prison. *See, e.g., Jones v. State,* 132 P.3d 162 (Wyo.2006). Applying this reasoning to Colorado's ISP program, this would mean that the extended limits on confinement would include only geographic and time limits.

In the context of ISP, the geographic and time limits placed on the parolee encompass only the ISP directives requiring the parolee to be in his approved residence of record during the specified curfew hours and, read in the context of the general parole directives, the Denver Metro Area during all other times. Limiting the definition of escape in this way comports with the idea of ISP confinement—an extension of traditional correctional facilities—because, as with traditional confinement, the parolee is required to remain in a particular place during a particular time. This definition also recognizes the reality that parolees often violate their ISP directives, especially by missing meetings and drug testing. Limiting the offense of escape prevents a parole officer from arbi-

---

1. I disagree with the majority that the erroneous jury instruction tendered by Townsend was invited error. Where an erroneous jury instruction is the result of attorney mistake or incompetence, it does not constitute invited error. *See People v. Stewart,* 55 P.3d 107, 119 (Colo.2002). Because defense counsel repeatedly objected to the prosecution and trial witnesses defining "extended limits on confinement" as encompassing all ISP directives, it seems that the erroneous jury instruction was likely due to attorney inadvertence or incompetence.

trarily exercising her discretion whether to seek a criminal escape charge (and resulting felony and five-year consecutive prison sentence), or to simply revoke parole, when a parolee inevitably fails to comply with one of his many ISP directives.

Allowing an escape conviction based on a parolee's violation of any other kind of ISP directive improperly broadens the offense of escape and lowers the prosecution's burden of proving each element of the charged offense beyond a reasonable doubt. *See Griego v. People,* 19 P.3d 1, 7 (Colo.2001).

The majority also does not address the trial court's definition of "escape" by deeming it harmless error. Maj. op. at 1112–13. In my view, the trial court erred by instructing the jury that escape is "a continuing activity commencing with the conception of the design to escape." First, it is axiomatic that "no crime can be committed by bad thoughts alone[;] [s]omething in the way of an act, or of an omission to act where there is a legal duty to act, is required too." 1 Wayne R. LaFave, *Substantive Criminal Law,* § 6.1(b) (2d ed. 2003). Second, we have stated that "a voluntary act" by the offender is a necessary element of the crime of escape. *People v. Lanzieri,* 25 P.3d 1170, 1172 (Colo. 2001). Therefore, to define escape as "commencing with the conception of the design to escape" both mischaracterizes the law of escape and erroneously punishes mere thought. Although the prosecution alleged that Townsend committed acts which constituted escape, this erroneous definition warrants correction because it so completely departs from our law and provides another example of the many errors that subjected Townsend to an unfair trial.

### III.

Turning to the facts of this case, Townsend disputed whether his parole officer instructed him to report to his residence of record the night he was released from incarceration. Townsend presented evidence that he never received notice of which ISP violations would constitute the crime of escape because, prior to his release, he and Vaughn never discussed his ISP parole conditions or agreed that New Genesis would be his residence of

record; nor did Vaughn arrange for Townsend's stay. However, Townsend did not dispute that he knowingly failed to attend a required meeting with Vaughn the morning after he was released.

At trial, the parole officers' testimony, the prosecutor's closing argument, and the jury instructions all erroneously informed the jury that violating any ISP directive would constitute escape. The prosecutor repeatedly urged the jury to convict Townsend for missing his meeting with Vaughn. And, importantly, the last argument the jury heard, during the prosecutor's rebuttal, emphasized this easy avenue to convict. The prosecutor stated: "[H]e didn't report to his parole officer. I'd ask you to follow the law and find him guilty."

Given the persistent erroneous instruction, the jury could have convicted Townsend based solely on this admission, without having to analyze the disputed issue of whether Townsend knowingly failed to report to his residence of record. Therefore, I believe these errors permitted the jury to convict Townsend of escape for violating an ISP directive that did not concern geographic or time limitations.

By directing the jury that violating any ISP directive constituted escape, the erroneous jury instructions, testimony, and closing argument, taken together, failed to adequately apprise the jury of the law, improperly broadened the offense of escape, and, thereby, lowered the prosecution's burden of proof. The additional facts that, (1) when Townsend was released, Vaughn never provided notice of which facts would constitute this new crime of escape, and (2) the trial court erroneously instructed the jury that the crime of escape includes the mere "conception" of escape, only add to the injustice that occurred here. I believe the combined effect of these errors constituted cumulative error and therefore require reversal. *See Oaks v. People,* 150 Colo. 64, 66–67, 371 P.2d 443, 446 (1962).

### IV.

Turning briefly to Townsend's constitutional challenges, I would hold that if "extended

limits on confinement" is defined as geographic and time limits placed on the offender beyond those imposed by incarceration in a correctional facility, the statute is not unconstitutionally vague or a violation of the separation of powers and nondelegation doctrines. *See Perea,* 74 P.3d at 332–34.

Accordingly, I dissent from Part II.A. of the majority opinion but concur with the majority's discussion in Parts II.B. and II.C., that the ISP escape statute is not unconstitutionally vague and does not violate separation of powers.

I am authorized to state that Justice MARTINEZ joins in this concurrence and dissent.