THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOUGLAS J. TAUBE, Defendant-Appellant.

Second District    No. 3—97—0810

Opinion filed September 14, 1998.—Rehearing denied December 4, 1998.

Zachary M. Bravos, of Law Offices of Zachary M. Bravos, of Wheaton, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Anthony J. Peraica, of Chicago, for the People.

JUSTICE RAPP delivered the opinion of the court:

Defendant, Douglas J. Taube, appeals from a finding of a violation of probation under section 5—6—4 of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/5—6—4 (West 1996)) and a sentence of four years in the Department of Corrections. The trial court denied defendant's motions to reconsider both the finding of a violation and the sentence.

On January 12, 1995, defendant pled guilty to two counts of criminal sexual assault in violation of section 12—13 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12—13 (West 1996)). The victims of these offenses were defendant's two adopted sons, P.T., age 10, and A.T., age 8. Defendant had been charged in a five-count indictment. The indictment included three counts of aggravated criminal sexual assault, in violation of section 12—14(b)(1) of the Criminal Code (720 ILCS 5/12—14(b)(i) (West 1996)), a Class X felony. The indictment also included two counts of aggravated criminal sexual abuse, in violation of section 12—16(b) of the Criminal Code (720 ILCS 5/12—16(b) (West 1996)), a Class 2 felony. Following a plea agreement, the State amended two of the counts to criminal sexual assault, a Class 1 felony. The remaining counts were nol-prossed and dismissed.

The trial court advised defendant that, pursuant to section 5—5—3(c)(2)(H) of the Corrections Code (730 ILCS 5/5—5—3(c)(2)(H) (West 1996)), he was not eligible for the probation proposed unless he agreed to accept, as a condition of probation, the counseling provisions of section 5—5—3(e) of the Corrections Code (730 ILCS 5/5—5—3(e) (West 1996)).

■ Section 5—5—3(e)(1) of the Corrections Code provides in pertinent part:

"In cases where prosecution for criminal sexual assault or aggravated criminal sexual abuse under Section 12—13 or 12—16 of

the Criminal Code of 1961 results in conviction of a defendant who was a family member of the victim at the time of the commission of the offense, the court shall consider the safety and welfare of the victim and may impose a sentence of probation only where:
    (1) the court finds (A) or (B) or both are appropriate:
        (A) the defendant is willing to undergo a court approved counseling program for a minimum duration of 2 years; or
        (B) the defendant is willing to participate in a court approved plan including but not limited to the defendant's:
            (i) removal from the household;
            (ii) restricted contact with the victim;
            (iii) continued financial support of the family;
            (iv) restitution for harm done to the victim; and
            (v) compliance with any other measures that the court may deem appropriate[.]" 730 ILCS 5/5—5—3(e)(1) (West 1996).

The defendant indicated he understood these provisions and agreed to abide by them as a condition of his sentence of probation. Probation was granted, concurrent on each count, and the order specifically provided the following special terms which are applicable to the issues raised in this appeal:

"48 months probation; 9 months of work release; obtain a sexual offender evaluation and complete all counseling & treatment recommended by Prob Dept [*sic*]; *** any counseling program must be for a minimum of 2 years; *** no unsupervised contact with [the victims] ***; pay costs of any counseling for the victims."

In the 27-month period between January 12, 1995, the date of sentencing, and April 10, 1997, the date of the hearing on the petition to revoke probation, defendant appeared before the court on 16 separate occasions. These appearances were required by defendant's multiple attempts to modify the terms of his probation and the State's attempts to enforce the original provisions.

The trial court allowed defendant, first, to travel to Texas temporarily, as required by his employment and, later, to relocate to Texas for a permanent job transfer. During this period, the State filed a petition to revoke probation based on visitation violations and noncompliance with the order of probation. In June 1995, the trial court allowed defendant to complete his jail sentence by serving straight time, with day-for-day credit, and to continue his counseling in Texas contingent on probation department approval. In January 1996, the probation department reported that it would not approve

counseling in Texas because defendant had been discharged from two programs in Texas for failure to abide by the requirements adopted for his rehabilitation. On June 6, 1996, defendant had returned to Illinois, and the State withdrew its petition to revoke contingent on defendant's completion of an evaluation in Illinois. The trial court directed defendant to begin counseling with Pat Porter, a therapist specializing in treating sexual offenders.

On November 7, 1996, the trial court held a hearing on defendant's *pro se* motions to modify the terms of his probation to allow alternative counseling. Defendant alleged he was being treated by his own counselors and that, therefore, it was unnecessary for him to continue with the court-ordered counseling. On the same day, Porter discharged defendant from the treatment program. After defendant's motion was denied, he filed a motion to reconsider and various other motions. On November 19, 1996, the State filed the petition to revoke probation, which is the subject of this appeal, alleging defendant had failed to complete counseling as required. In response, defendant filed a *pro se* motion which the trial court interpreted as a request for a bill of particulars. The State replied by forwarding a copy of defendant's treatment file as maintained by Pat Porter.

On April 10, 1997, the trial court held a hearing on the State's petition to revoke probation.

The State called Pat Porter, the therapist to whom defendant had been referred for evaluation and treatment. She testified that defendant was evaluated in March 1996, that he objected to certain tests given, and that he was evaluated as a moderate risk to reoffend. She testified that defendant's treatment started in June 1996. Defendant attended the individual counseling and all but one of the group sessions. According to Ms. Porter, defendant was angry and felt that he did not need treatment. He objected to certain procedures and claimed it was an excessive burden to comply. She stated that defendant did not deny the commission of the offenses but insisted that his motive was to satisfy the requests of his adopted sons. He saw himself as a victim of the children, his ex-wife, and the court system. She testified that defendant failed to complete some of the required homework assignments and that others were only partially completed. Defendant also objected to several questions on religious grounds. She testified that defendant failed to see the usefulness of group sessions, objected to discussions of sexual matters, other than sexual abuse of his children, and felt that group therapy was irrelevant and unnecessary for him. She further stated that in her opinion defendant was in denial, that he showed no remorse or reflection on the harm to his sons, and that he wanted the victims to take responsibility for the abuse.

Porter testified she had originally planned a period of six to eight months for defendant to settle into treatment. She testified that on November 7, 1996, however, she decided to terminate the defendant because he had not benefitted from the treatment.

On cross-examination, Porter admitted that, only one day prior to terminating his treatment, she told defendant she would be willing to continue treatment. She also admitted that she had never informed defendant before the termination that he had failed to cooperate in treatment. She further testified that she had discussed with defendant his concerns about the form of treatment proposed by the two providers in Texas. She was shown completed copies of two disputed homework assignments, but she denied having seen them prior to the hearing. Defense counsel also questioned Ms. Porter regarding the ethical duties and treatment methods used by the Texas treatment programs.

Defendant called three witnesses: James Goia, a licensed clinical psychologist; Russell Hoffman, a therapist; and David Eubanks, a therapist.

James Goia testified he had treated defendant in 1993 and 1994 for an adjustment disorder with depressed mood. He testified that he had found defendant cooperative and sincere in seeking treatment. He further stated that defendant was able to accept responsibility for his actions. On cross-examination, Goia admitted that he had not treated defendant for any criminal acts he might have committed and that the actions he referred to included seeking treatment and maintaining consistent attendance at those sessions.

Russell Hoffman testified that he had treated defendant beginning in 1994 for career stress, divorce adjustment, and the sexual offenses. He further testified that in his opinion defendant was not in denial and had been cooperative in therapy. On cross-examination, Hoffman admitted that he had not seen defendant for some time and had only recently resumed treating defendant.

David Eubanks testified he had been defendant's therapist for two months in 1995. He indicated that defendant did not deny commissions of the offenses and he found defendant to be a candidate for treatment. On cross-examination, Eubanks testified that defendant had been referred to him by the probation department for evaluation. But he admitted he did not treat defendant because the probation department was unsatisfied with the proposed treatment plan. He also stated that in his opinion he could have worked effectively with defendant, but defendant relocated to Texas before a treatment plan acceptable to the probation department could be prepared.

Defendant testified on his own behalf. Defendant stated that he was not in denial. He complained that Pat Porter failed to tell him that he was not complying with treatment. He stated that he had only

objected to one assignment, because it contained definitions of deviant sex acts he had not committed and which he felt were irrelevant to his treatment. He also contended that he cooperated with the programs in Texas. Defendant, however, stated that he had refused to participate in some of the suggested therapies, because he felt they were unusual and inappropriate.

Following the April 10, 1997, hearing, the trial court found the petition to revoke had been "proven" and set a date for re-sentencing. On June 11, 1997, defendant filed a motion to strike the testimony of Pat Porter regarding homework assignments, alleging certain notes were missing from the discovery materials provided to defendant. Defendant also filed a motion to reconsider and in the alternative a motion for rehearing. The trial court denied defendant's motion to reconsider and motion for rehearing but reopened the proofs to allow further cross-examination of Pat Porter. Additional testimony was heard on July 9, 1997.

On July 23, after hearing additional cross-examination of Pat Porter, the trial court again found that defendant had violated the terms of his probation, revoked his probation, and set a date for resentencing. On October 6, 1997, the trial court sentenced defendant to four years' imprisonment in the Department of Corrections with credit for time served. Defendant's motion to reconsider the sentence was denied. Defendant timely appealed.

On appeal, the defendant raises the following issues: (1) whether the trial court correctly found a violation of probation; (2) whether defendant was denied due process of law, because the terms of the probation order were unconstitutionally vague; and (3) whether the sentence imposed following the revocation of probation was proper.

■ Section 5—6—4(c) of the Corrections Code requires the State to establish by a preponderance of the evidence that a defendant violated a condition of his probation. 730 ILCS 5/5—6—4(c) (West 1996); see also *People v. Crowell*, 53 Ill. 2d 447, 451 (1973); *People v. Strickland*, 211 Ill. App. 3d 183, 189 (1991). The determination to terminate probation rests within the discretion of the trial court, and, unless the determination was against the manifest weight of the evidence, an appellate court will not disturb the trial court's ruling. *People v. Salamon*, 126 Ill. App. 3d 1066, 1070 (1984). The decision to terminate probation is not *per se* against the manifest weight of the evidence simply because there is a conflict in the evidence. *People v. Prusak*, 200 Ill. App. 3d 146, 149 (1990) citing *Salamon*, 126 Ill. App. 3d at 1070.

■ Defendant argues that the decision of the trial court was contrary to the manifest weight of the evidence and relies heavily on our decision in *People v. Prusak. Prusak* stands for the proposition that

probation cannot be revoked simply because a defendant has failed to benefit from fulfilling the conditions imposed. *Prusak*, 200 Ill. App. 3d at 150. We disagree with defendant's assertion that the facts of his case fall within the bounds of our decision in *Prusak*.

In *Prusak*, the State attempted to revoke the probation of a sex offender, because the treating clinic discharged him prior to completion of his treatment. *Prusak*, 200 Ill. App. 3d at 148. As a condition of his probation, Prusak had been ordered to cooperate with any treatment recommendation made by the Sinnissippi Mental Health Center. *Prusak*, 200 Ill. App. 3d at 147. The clinical supervisor evaluated the defendant and recommended that he attend weekly meetings of the center's sexual offenders group. *Prusak*, 200 Ill. App. 3d at 147. After attending these weekly meetings for approximately five months, Prusak was asked to leave the group because of his continued persistence that he did not remember having inappropriate sexual contact with his daughter. *Prusak*, 200 Ill. App. 3d at 147-48. The clinical supervisor testified that Prusak's denials had become disruptive to the group. *Prusak*, 200 Ill. App. 3d at 148. The record, however, revealed that Prusak also had physical ailments that affected his mental capabilities, including his memory. *Prusak*, 200 Ill. App. 3d at 150.

The trial court, in *Prusak*, held that the defendant " 'followed the letter of the order,' " but not " 'the spirit of the order of probation.' " *Prusak*, 200 Ill. App. 3d at 149. We reversed and held:

"Simply because Prusak did not benefit from fulfilling the condition imposed upon his probation does not mean that he did not satisfy the condition. The trial court improperly interpreted the condition of probation to mean that not only did Prusak have to undergo treatment, but he was also required to be 'cured.' " *Prusak*, 200 Ill. App. 3d at 150.

In this case, however, Taube has not simply failed to benefit from the proposed treatment; he has failed to cooperate in his treatment. Ms. Porter testified that defendant failed to return some homework assignments and failed to fully complete others. She also testified that he was angry and blamed the probation department and the courts for his problems. Ms. Porter was unable to form a therapeutic relationship with defendant. Defendant points to the testimony of his other therapists and suggests that he was capable of forming a therapeutic relationship with them. He concludes, therefore, that the failure to succeed in treatment with Ms. Porter was not his fault. We do not agree. This is simply additional evidence that any problems defendant encountered with Ms. Porter arose from his reluctance to proceed with court-ordered treatment and his desire to choose his own form of therapy. Therefore, we determine that the trial court's finding of a probation violation was not against the manifest weight of the evidence.

This finding is not, as defendant suggests, contrary to our ruling in *Prusak*. In *Prusak*, we held that a court can order a defendant to undergo treatment but cannot order him to be "cured". *Prusak*, 200 Ill. App. 3d at 150. This court, however, has been reluctant to expand the application of *Prusak*. See *People v. McGuire*, 216 Ill. App. 3d 705, 709 (1991) ("We find *Prusak* substantially limited to its unique facts"). The case *sub judice* highlights an important limitation to our holding in *Prusak*. Although a court cannot order a sex offender to be successfully treated, a defendant ordered to undergo treatment must actively participate and cannot refuse to participate in his own treatment simply because he disagrees with the methods used. A defendant on probation must comply with court-ordered treatment, and his personal opinion regarding the need for treatment is irrelevant. *People v. Bell*, 219 Ill. App. 3d 264, 267 (1991). Our holding in *Prusak* protects only those offenders who have honestly, sincerely, and completely cooperated in a treatment program, yet have nonetheless failed to recover. It does not, as in this case, provide a shield for those offenders who object to the treatment ordered by the court and refuse to cooperate fully.

Defendant also argues that he was denied due process because the terms used were so vague that he could not understand the requirements of his probation. He complains that the phrase "failed to cooperate with and complete the sex offender counseling and treatment recommended by the probation department" is vague and that the order of probation fails to specify in writing what is expected of him.

■ Although the defendant in a probation revocation hearing is not entitled to all the procedural safeguards provided a defendant initially standing trial, due process requires a fair determination that the acts forming the basis for revocation did occur. *People v. Cox*, 197 Ill. App. 3d 239, 243 (1990). A probation order must clearly notify a defendant what is required of him and what is prohibited. *People v. Saucier*, 221 Ill. App. 3d 287, 292 (1991). If an order fails to inform a defendant of the required and prohibited conduct, the failure to comply cannot support a petition to revoke. *Saucier*, 221 Ill. App. 3d at 292.

■ Here, we do not find that the probation order was unconstitutionally vague. We find nothing vague in the phrase "cooperate with and complete the sex offender counseling and treatment." The ultimate question, therefore, becomes whether Ms. Porter sufficiently informed defendant of the terms and conditions of his treatment to allow him to know what was expected. Ms. Porter testified that she informed defendant that among other things he was required to complete the homework assignments. She also presented the court with a detailed agreement for treatment, which bore defendant's

signature. She testified that despite these instructions defendant was not cooperating with his treatment. Defendant, on the other hand, testified that he was not aware of the requirements. This issue, therefore, turns on the credibility of the witnesses regarding defendant's knowledge of the requirements of his treatment. The question of the credibility of the witnesses is an issue reserved for the trial court, and we will not substitute our own judgment on appeal. See, *e.g., People v. Jarvis,* 158 Ill. App. 3d 415, 425 (1987). In its ruling, the trial court implicitly accepted the testimony of Ms. Porter. Therefore, because we accept the trial court's finding of fact that defendant was aware of the conditions of his treatment, we must reject any claim that defendant was deprived of due process.

■ Defendant also alleges that he was denied due process because the petition to revoke did not adequately inform him of the alleged violation. We disagree. Upon defendant's motion, the contents of his evaluation and treatment file maintained by Ms. Porter were revealed to defendant. Moreover, when defendant disputed the contents of the file, the trial court reopened the proofs to allow additional discovery and further cross-examination of Ms. Porter. The relevant portions of the probation department's file were also disclosed to defendant. Although defendant complains of a "secret opinion of treatment personnel," the record reflects that defendant was supplied with sufficient information to prepare his defense. The fact that a professional opinion was offered by Ms. Porter without prior consultation with defendant is not in itself a denial of due process.

■ Finally, defendant argues that the sentence imposed was an abuse of discretion. Sentencing is a matter in the sound discretion of the trial court, and a sentence will be overturned only if it is an abuse of that discretion. *People v. Banks,* 260 Ill. App. 3d 464, 473 (1994). The court may consider a number of factors including the nature of the crime and the defendant's potential for rehabilitation. See *Banks,* 260 Ill. App. 3d at 474. Moreover, the manner in which a defendant conducts himself while on probation may be considered to determine rehabilitation potential. *People v. Walsh,* 273 Ill. App. 3d 453, 460 (1995).

■ The trial court imposed a sentence of four years' imprisonment in the Department of Corrections with credit for time served in the county jail. This was the minimum term of incarceration mandated for a Class 1 felony. 730 ILCS 5/5—8—1(a)(4) (West 1996). The trial court's determination that defendant's rehabilitative potential was exhausted was not contrary to the manifest weight of the evidence. The record is replete with admonishments to defendant of his need for proper evaluation and treatment. Defendant's probation was not

revoked until after he had been unsuccessfully discharged from three separate treatment programs. Although defendant complains that he was not allowed the recommended six to eight months to complete treatment, he ignores the fact that, because of his own agenda, the evaluation and treatment that was required during the first two years of his four-year probation did not even begin until 15 months of probation had passed. Moreover, the presentencing report reveals that defendant felt that the court-ordered therapists were liars who had falsified his records. Given defendant's failure to successfully complete any of the three treatment programs he had started, and his clear animosity toward the court and the probation department, it is highly unlikely that he would successfully complete any court-ordered counseling.

Therefore, we find that the sentence imposed following the violation of probation was proper and was not an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.