The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Scott FIRTH, Defendant–Appellant.**

No. 06CA2346.

Colorado Court of Appeals, Div. VI.

Sept. 4, 2008.

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Cory D. Riddle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, Scott Firth, appeals the district court's order denying his Crim. P. 35(c) motion for postconviction relief following the revocation of his probation and his sentence to an indeterminate term of six years to life in the Department of Corrections. We affirm.

## I. Facts

Defendant was charged with three counts of aggravated incest for having sexually molested his daughter from the time she was nine years old until she was seventeen. Pursuant to a plea agreement, defendant pled guilty to sexual assault on a child fifteen to seventeen years of age by one in a position of trust, a class 4 felony, and was sentenced to sixty days in the Archuleta County Jail, followed by probation for a term of ten years to life. The terms of probation required, among other things, that defendant enroll in a sex offender treatment program offered by CareNet in Denver. The terms also required defendant to participate in a treatment program as required by the Colorado Sex Offender Management Board's (SOMB's) Standards and Guidelines for the Assess-

ment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders (Standards and Guidelines) under the supervision of his probation officer. In particular, condition number 16 of defendant's probation stated:

> You shall attend and actively participate in a sex offender evaluation and treatment program approved by the probation officer. You will abide by the rules of the treatment program, and the treatment contract and will successfully complete the program to the satisfaction of the probation officer and the treatment provider.

The trial court noted that the leniency of the sentence was, in part, a response to the court's perception that defendant was making a sincere effort to succeed in sex offender treatment, having begun treatment at CareNet before sentencing. The court went on to note that "100 percent compliance" with the conditions of probation was expected from defendant.

Upon his release from jail, defendant returned to Denver and continued his treatment in the CareNet program. While at CareNet, he participated and progressed to the general satisfaction of his supervising doctor. Defendant's treatment providers, however, repeatedly raised concerns regarding defendant's lack of empathy for his victim and his marginal recognition of his own responsibility. Defendant's probation officer also became concerned for public safety when defendant disclosed fantasies about handcuffing a young girl whom he had seen in his apartment building and self-reported an incident where he got into his car to follow an attractive jogger.

In light of the foregoing, defendant's probation officer determined that the risk of defendant's reoffending was escalating. Accordingly, pursuant to the Standards and Guidelines and in accordance with condition 16 of defendant's probation, she arranged to transfer him to Sexual Offense Resource Services (SORS), also in Denver, where he would be subject to a higher level of containment and monitoring than he had been at CareNet. Defendant was unhappy with this decision and moved to have his probation transferred to Archuleta County. In the interim, defendant signed a treatment contract with SORS on December 23, 2003.

Although defendant attended group therapy sessions at SORS, the record reflects that he rejected feedback from his treatment group, concluding that the group members' perspective was "distorted." Defendant's treatment provider at SORS characterized this attitude as typical of defendant's lack of accountability and responsiveness to the concerns and feedback of others, including his victim, treatment providers, and treatment team. The provider further noted that defendant's animosity toward his peers remained an ongoing concern and that defendant's arrogance and resistance to feedback prevented him from progressing in treatment. The record indicates that defendant's problems at SORS stemmed from his displeasure regarding his removal from CareNet and his desire to transfer his probation to Archuleta County.

On February 24, 2004, defendant was terminated from the SORS program "due to his unwillingness to engage in [the] treatment program in a meaningful way." In connection with this termination, defendant's treatment provider also noted that a skinning knife was found in defendant's car, allegedly a violation of another probation condition.

That same day, defendant's probation officer filed a Petition to Revoke Probation, based on defendant's failure to complete treatment and his possession of the knife. Following a hearing, the court found that defendant had violated the conditions of his probation. The court therefore revoked probation and sentenced defendant to an indeterminate prison term of six years to life, pursuant to the Colorado Sex Offender Lifetime Supervision Act (the Act), §§ 18–1.3–1001 to –1012, C.R.S.2007.

Defendant subsequently filed a petition for postconviction relief pursuant to Crim. P. 35(c). After an evidentiary hearing, the trial court agreed with defendant that the evidence as to the knife was insufficient to support revocation of probation. The court, however, rejected defendant's remaining ar-

guments and denied defendant's Crim. P. 35(c) petition. Defendant now appeals.

## II. Standard of Review

■ The denial of a Crim. P. 35(c) motion is reviewed for abuse of discretion. *See People v. Abad,* 962 P.2d 290, 292 (Colo.App. 1997). In postconviction proceedings, the legality of the judgment and the regularity of proceedings below are presumed, and the burden is on the defendant to establish his allegations by a preponderance of the evidence. *Lamb v. People,* 174 Colo. 441, 446, 484 P.2d 798, 800 (1971).

## III. Vagueness of Condition 16

Defendant first argues that condition 16, quoted above, is unconstitutionally vague on its face and as applied. We disagree.

■ Many Colorado cases have addressed void for vagueness challenges to statutes. *See, e.g., People v. Perea,* 74 P.3d 326, 332 (Colo.App.2002). We have found no Colorado case, however, and the parties have cited none, applying the void for vagueness doctrine to conditions of probation, although cases from other jurisdictions have done so. *See, e.g., People v. Reinertson,* 178 Cal. App.3d 320, 324, 223 Cal.Rptr. 670, 672 (1986); *Hunter v. State,* 883 N.E.2d 1161, 1163–64 (Ind.2008); *State v. Allen,* 370 S.C. 88, 634 S.E.2d 653, 657 (2006). Based upon the reasoning of these cases, we now conclude that the void for vagueness doctrine applies to conditions of probation and proceed to the merits of defendant's argument.

■ Vague laws are void where they "fail to give fair notice of the conduct prohibited and do not supply adequate standards to prevent arbitrary and discriminatory enforcement." *Perea,* 74 P.3d at 332; *cf. Griffin v. Wisconsin,* 483 U.S. 868, 875 n. 3, 107 S.Ct. 3164, 3169 n. 3, 97 L.Ed.2d 709 (1987) (if a regulation concerning probation establishes a standard of conduct to which a probationer must conform on pain of penalty, a court cannot adopt so unnatural an interpretation of the language that the regulation would fail to provide adequate notice as to what is required). The essential inquiry is whether the condition describes the proscribed conduct in terms so vague that persons of common intelligence cannot readily understand its meaning and application. *Perea,* 74 P.3d at 332. Due to the nature of language, mathematical certainty is not required. *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972); *Perea,* 74 P.3d at 332. A law is unconstitutionally vague "only if it specifies no standard of conduct at all, and not if it requires a person to conform his or her conduct to an imprecise, but comprehensible normative standard." *Perea,* 74 P.3d at 332. In light of our determination that the void for vagueness doctrine applies not only to statutes but also to conditions of probation, we apply these same standards in this case.

Several jurisdictions have rejected vagueness challenges to probation conditions like that present here. For example, in *People v. Taube,* 299 Ill.App.3d 715, 234 Ill.Dec. 233, 702 N.E.2d 573, 580 (1998), the court found "nothing vague in the phrase 'cooperate with and complete the sex offender counseling and treatment.'" The court stated that the important question was whether the defendant had been sufficiently informed of the conditions of his treatment by his treatment provider. *Id.*

Similarly, in *State v. Peck,* 149 Vt. 617, 547 A.2d 1329, 1331 (1988), the Vermont Supreme Court considered a condition stating that the defendant must "attend and participate in mental health counseling, treatment and rehabilitation as directed by [his] probation officer and complete [it] to the full satisfaction of [the] probation officer." The court held that this language was sufficient to give the defendant notice of the required conduct, particularly when coupled with his probation officer's warning that completion of the program was a requirement of his probation. The court observed that "[f]air notice can ... be provided by the instructions and directions given to defendant by his or her probation officer." *Id.*

Finally, in *State v. Riles,* 135 Wash.2d 326, 957 P.2d 655, 660 (1998), the Washington Supreme Court held that a condition requiring that the defendant "enter into and *make reasonable progress in mental health counseling, and/or sexual deviancy therapy,* with

a therapist approved by [his] Community Corrections Officer" was not unconstitutionally vague. The court pointed to the authorizing statute, which provided that the offender "shall participate" in treatment, and noted that "reasonable progress simply means he must actively participate in the treatment program," with "participate" being defined in its ordinary sense. *Id.* at 667. The court observed, "The Constitution does not require 'impossible standards of specificity' or 'mathematical certainty'[;] some degree of vagueness is inherent in the use of language.'" *Id.* at 667–68 (quoting *State v. Halstien,* 122 Wash.2d 109, 857 P.2d 270, 276 (1993)).

■ Here, for the reasons stated in the foregoing authorities, we perceive nothing vague in the requirement that defendant actively participate and successfully complete treatment to the satisfaction of his probation officer and treatment provider. Moreover, the record demonstrates that defendant's probation officer reviewed the conditions of probation with him and the trial court emphasized that "100 percent compliance" was mandatory. Nothing in the record of the sentencing and revocation hearings indicates that defendant was in any way confused as to what was required of him. To the contrary, at the hearing on defendant's Crim. P. 35(c) petition, defendant's probation revocation counsel testified that he could not recall lack of notice being an issue.

Accordingly, we hold that condition 16 was not unconstitutionally vague either on its face or as applied to defendant. *Cf. People v. Ickler,* 877 P.2d 863, 866–67 (Colo.1994) (upholding probation revocation where the defendant was required to participate and cooperate in treatment program but where the defendant, among other things, did not give straightforward answers in the initial evaluation process and did not accept responsibility for his crime; court also rejected the defendant's argument that he was not given fair notice as to what was required of him).

## IV. Failure to Follow Standards and Guidelines

■ Defendant next contends that his probation officer and treatment provider failed to follow the requirements of § 18–1.3–1010, C.R.S.2007, for revocation of probation, thereby violating his due process rights. We are not persuaded.

Section 18–1.3–1010(2), C.R.S.2007, states:

> At any revocation proceeding, the sex offender's probation officer and the sex offender's treatment provider shall submit recommendations concerning the level of treatment and monitoring that should be imposed as a condition of probation if probation is not revoked or whether the sex offender poses a sufficient threat to the community that probation should be revoked. The recommendations shall be based on the criteria established by the management board pursuant to section 18–1.3–1009.

The SOMB drafted the Standards and Guidelines pursuant to this statutory mandate.

The Standards and Guidelines provide that to demonstrate successful progress in treatment, the offender must meet the progress criteria in each of a number of categories. Among other things, these criteria require that the offender: (1) demonstrate "willing, active and knowledgeable participation in the treatment process," § LS 4.110(B); (2) "not present himself or herself as entitled or as a victim," § LS 4.110(D); and (3) demonstrate "a primarily positive attitude toward supervision and treatment," *id.* Similarly, the Standards and Guidelines provide that to meet the criteria for successful completion of treatment, the offender must meet all of the criteria in each of a number of areas. Finally, the Standards and Guidelines state:

> Just as an offender can be progressed through the levels of supervision, an offender can be regressed or revoked for certain behaviors. If an offender is consistently failing to meet criteria for progression, the team should evaluate whether the current level of supervision is intensive enough to adequately contain the offender.

SOMB Standards and Guidelines appx. LS, at ii.

Here, defendant's probation officer and treatment provider recommended revocation of probation based on behaviors of continued

concern that track the foregoing criteria. For example, defendant's treatment provider noted that defendant persisted in his belief that the perspectives of the other members of his treatment group were distorted and that defendant was unresponsive to such feedback, all contrary to § LS 4.110(B). Likewise, defendant's treatment provider noted that defendant's arrogance and resistance to feedback prevented him from benefiting from treatment, contrary to §§ LS 4.110(B) and LS 4.110(D).

Moreover, at the revocation hearing, defendant's probation officer and treatment provider made the recommendations required by § 18–1.3–1010:

> The aforementioned concerns prevent Mr. Firth from engaging in community based treatment in a safe and meaningful manner [sic] would appear to preclude his ability to benefit from any sex offense specific treatment at this time. As a result, behavioral monitoring should remain the primary focus of Mr. Firth's supervision and treatment plan....
>
> ... Mr. Firth remains at risk in the community, and according to the SOMB Standards ..., a higher level of supervision is appropriate, which could include Community Corrections or the Department of Corrections. Should Mr. Firth be sentenced to the Department of Corrections, his participation in the Department of Corrections Sex Offender treatment would be warranted.

For these reasons, we conclude that the trial court did not abuse its discretion in determining that defendant's probation officer and treatment provider followed the requirements of § 18–1.3–1010 and in revoking defendant's probation.

■ Finally, to the extent defendant argues that it was improper to remove him from CareNet because his participation there was a specific requirement of his probation conditions, we likewise disagree. Condition 16 and the language of the Standards and Guidelines gave defendant's probation officer the authority to move him into a program of higher containment without further court order when she perceived that his behavior posed an increased risk to the community.

## V. Ineffective Assistance of Counsel

Defendant next argues that he received ineffective assistance of counsel because the attorney who represented him at the revocation hearing did not adequately cross-examine witnesses, failed to review defendant's treatment files, and failed to review and reference the SOMB Standards and Guidelines. We disagree.

A claim of ineffective assistance of counsel must satisfy two components: defense counsel's performance must have been constitutionally deficient, and the deficient performance must have prejudiced the defense of the case. *People v. Garcia,* 815 P.2d 937, 940 (Colo.1991). "The prejudice component requires the defendant to prove that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 941 (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). If the defendant has not suffered such prejudice, then a court need not reach the question of whether defense counsel's performance was deficient. *Garcia,* 815 P.2d at 941.

■ Here, the trial court found that even had defendant's prior counsel complied with defendant's present expectations as to how he should have been represented, defendant's probation still would have been revoked, and, thus, he suffered no prejudice. In particular, the trial court found, with record support, that defendant was discharged from the SORS program by the treatment provider due to his lack of victim empathy, his arrogance and inability to recognize the distortions in his own thinking, and his general unwillingness or inability to participate in treatment in a meaningful way. Because there is ample support in the record for each of these findings independent of the alleged deficient performance of defendant's prior counsel, we perceive no error in the trial court's finding that defendant failed to establish the requisite prejudice to support his ineffective assistance claim.

## VI. Double Jeopardy

Defendant next contends that his resentencing upon the revocation of his probation violated his constitutional protection against double jeopardy. We reject this argument.

 It is well settled that

> double jeopardy concerns do not arise [in the context of probation revocation] because probation revocation is not part of a criminal prosecution and constitutes only a reconsideration of the original sentence....
>
> ....
>
> ... [D]ouble jeopardy is not implicated by probation revocation proceedings because the function of those proceedings is not to punish a defendant for a new crime. Rather, their purpose is to ascertain an appropriate sentence for an offense of which defendant has already been convicted and for which probation was granted.

*People v. Preuss,* 920 P.2d 859, 860–61 (Colo. App.1995).

The mere fact that the sentencing court here mentioned defendant's original crime when passing sentence does not implicate double jeopardy. In "a probation revocation hearing, the concern is whether the alternatives to incarceration which have been made available to a defendant remain viable for him.... [A] probation revocation order operates not as a determination of guilt or innocence as to the question of whether the defendant violated the terms of his probation, but primarily as a reassessment of the correctness of the original sentence." *People ex rel. Gallagher v. District Court,* 196 Colo. 499, 502, 591 P.2d 1015, 1017 (1978). Thus, once a trial court has revoked a defendant's probation, it is authorized to impose any sentence that could have been imposed originally for the underlying crime. *People v. Santana,* 961 P.2d 498, 500 (Colo.App.1997).

Here, the sentence imposed on defendant, six years to life, is within the statutorily mandated sentencing guidelines and includes the mandatory indeterminate maximum. *See* §§ 18–1.3–401, 18–1.3–1004, C.R.S.2007. Accordingly, defendant's sentence does not violate double jeopardy.

## VII. Constitutionality of the Act

Finally, defendant argues that the Act is unconstitutional because it violates his rights to trial by jury and equal protection, and further violates the prohibition against cruel and unusual punishment and the separation of powers doctrine. We disagree.

As defendant correctly states, several divisions of this court have previously considered the constitutionality of the Act and have rejected such challenges. *People v. Lehmkuhl,* 117 P.3d 98 (Colo.App.2004); *People v. Dash,* 104 P.3d 286 (Colo.App.2004); *People v. Oglethorpe,* 87 P.3d 129, 134 (Colo.App.2003); *People v. Strean,* 74 P.3d 387 (Colo.App. 2002). Nonetheless, defendant urges us to reconsider and depart from those decisions. We decline to do so and reject defendant's contentions for the reasons stated in those cases.

The order is affirmed.

Judge WEBB and Judge LOEB concur.