22CA1932 Peo v Meyer 10-17-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1932
Adams County District Court No. 10CR1042
Honorable Robert W. Kiesnowski, Jr., Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ryan John Meyer,

Defendant-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE NAVARRO
Dunn and Richman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Tara Jorfald, Alternate Defense Counsel, Lakewood, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, Ryan John Meyer, appeals the district court's order denying his Crim. P. 35(c) motion. We affirm.

## I.    Factual and Procedural History

¶ 2    In April 2010, Meyer and three accomplices — Kenneth Lacey, Tikim Alexander, and Ryan Harrison — drove to the victim's house to steal money and drugs. Meyer parked his van a short distance from the house, and he and the accomplices waited for the victim to leave. Once the victim left, Lacey, Alexander, and Harrison broke into the victim's house; however, they were interrupted when she returned home with her children. One accomplice phoned Meyer, who was in the van, and Meyer entered the house. The accomplices took the victim and the children down to the basement at gunpoint, and they searched the house. When police arrived to investigate a report of suspicious activity, Meyer and his accomplices fled the scene. Later, they were all apprehended. *See People v. Meyer*, slip op. at ¶ 2 (Colo. App. No. 12CA2166, Sept. 15, 2016) (not published pursuant to C.A.R. 35(e)).

¶ 3    At a jury trial, Lacey testified about the incident. None of the other accomplices testified, nor did the victim. Meyer was convicted of two counts of second degree kidnapping, aggravated robbery, first

1

degree burglary, first degree trespassing, two counts of child abuse, second degree burglary, two counts of crime of violence sentence enhancers, and three counts of habitual criminal sentence enhancers. *Id.* at ¶ 1. On direct appeal, a division of this court vacated Meyer's conviction for second degree burglary but otherwise affirmed the judgment. *Id.*

¶ 4 In 2020, Meyer petitioned for postconviction relief under Crim. P. 35(c), asserting that he had received ineffective assistance from trial counsel and that he was entitled to an extended proportionality review of his sentences under *Wells-Yates v. People*, 2019 CO 90M.[1] Regarding his trial counsel, Meyer asserted that counsel did not adequately (1) investigate the victim or call her to testify; (2) investigate Harrison or call him to testify; and (3) pursue a plea agreement from the prosecution. The district court granted an evidentiary hearing on Meyer's ineffective assistance of counsel claim regarding the victim but denied his other claims without a

---

[1] Meyer also raised other claims in his postconviction motion, but we deem them abandoned because he does not pursue them on appeal. *See People v. Ortega*, 266 P.3d 424, 428 (Colo. App. 2011).

hearing.  After a hearing on Meyer's claim pertaining to the victim, the court denied that claim too.

## II.  Ineffective Assistance of Trial Counsel

¶ 5  We disagree with Meyer that the district court erred by denying his claims that his counsel provided ineffective assistance.

## A.  General Law and Standard of Review

¶ 6  In postconviction proceedings, the legality of the judgment and the regularity of the proceedings leading up to the judgment are presumed, and the defendant bears the burden to establish by a preponderance of the evidence the allegations in the postconviction motion.  *People v. Firth*, 205 P.3d 445, 449 (Colo. App. 2008).

¶ 7  "A criminal defendant is constitutionally entitled to effective assistance from his counsel." *People v. Ardolino*, 69 P.3d 73, 76 (Colo. 2003).  To demonstrate ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The defendant must show both that (1) their attorney's performance was deficient and (2) the deficient performance prejudiced them.  *Id.* at 687; *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007).  If the court determines that counsel's performance was not constitutionally deficient, it

need not consider the prejudice prong. *See People v. Sparks*, 914 P.2d 544, 547 (Colo. App. 1996). Likewise, if the court concludes that the defendant failed to demonstrate prejudice, the court may resolve the claim on that basis alone. *See People v. Garcia*, 815 P.2d 937, 941 (Colo. 1991).

¶ 8    Deficient performance is that which falls outside "the wide range of professionally competent assistance." *People v. Washington*, 2014 COA 41, ¶ 18 (citation omitted). To establish prejudice, the defendant must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at ¶ 23. A reasonable probability is one sufficient to undermine confidence in the case's outcome. *Id.*

¶ 9    Review of a district court's denial of a Crim. P. 35(c) claim after an evidentiary hearing presents a mixed question of fact and law. *See People v. Sifuentes*, 2017 COA 48M, ¶ 16. We defer to the court's factual findings if supported by the evidence, but we review de novo the court's legal conclusions. *See id.*; *People v. Johnson*, 2022 COA 2, ¶ 9. As to a claim of ineffective assistance of counsel in particular, we review de novo the district court's ultimate

determinations about whether counsel's performance was deficient or prejudicial under the *Strickland* standard. *See Sifuentes*, ¶ 16.

¶ 10 And we review de novo a district court's denial of a Crim. P. 35(c) claim without an evidentiary hearing. *People v. Gardner*, 205 P.3d 1262, 1266 (Colo. App. 2010).

## B. The Victim

¶ 11 Meyer alleged that his trial counsel did not sufficiently investigate the victim's account of the incident or call her as witness at trial. Meyer also alleged that he was prejudiced by this failure because the victim's testimony would have contradicted Lacey's testimony implicating Meyer. To reiterate, the district court denied this claim after an evidentiary hearing. We agree with the court that Meyer did not show prejudice from counsel's failure to further investigate the victim or call her as a witness.[2] We reach this conclusion for two reasons: (1) the record makes clear that the victim would have refused to testify even if called as a witness and (2) her account of the incident did not substantially contradict Lacey's trial testimony.

---

[2] Hence, we need not consider whether counsel's performance was deficient.

¶ 12    The victim testified at the postconviction hearing.  She said multiple times that she would not have testified at Meyer's trial if she had been called as a witness because she would not "feel comfortable testifying in somebody's defense who was in my home." She also explained that she would have invoked her Fifth Amendment privilege against self-incrimination due to the evidence found in her home indicating that she manufactured drugs.  In fact, the victim said she would have refused to testify at Meyer's trial even if the trial court had limited the questioning so as not to elicit testimony incriminating her and even if the trial court would have held her in contempt for refusing to testify.  The victim then acknowledged a caveat: she said that, if a contempt finding would have risked revocation of her probation and resulted in her ensuing arrest, such a situation would "more than likely" have been a "factor" in deciding whether to testify.

¶ 13    Based on the victim's testimony at the postconviction hearing, the district court gleaned from the "conflicting information" that "it appears" Meyer's trial counsel "could have cajoled" the victim into testifying at trial.  It is not clear whether this is a factual finding or merely an observation about a possible inference that could be

drawn from the victim's testimony. But to the extent this constitutes a factual finding, we conclude that the record does not support it. *See People v. Johnson*, 2024 CO 47, ¶¶ 35-36 (concluding that a trial court's factual finding was clearly erroneous when the record showed that the court "misremembered or misunderstood testimony" from the evidentiary hearing).

¶ 14    As discussed, the victim acknowledged that, if a contempt finding could have threatened her probation and led to her arrest, she might have reconsidered her refusal to testify at Meyer's trial. The record shows, however, that the victim was *not* on probation at the time of the trial. While she had pleaded guilty to charges related to the drugs found in her home, she had not been sentenced yet. (After Meyer's trial, she was sentenced to probation.) Therefore, her concerns about a revocation of probation could not have influenced her decision about testifying at Meyer's trial. Because the possible exception to her refusal to testify at his trial did not apply, the victim's adamant declarations that she would have refused are uncontradicted. Therefore, Meyer did not show prejudice from trial counsel's failure to call the victim as a witness.

¶ 15    Moreover, even if the victim had testified, we do not perceive a reasonable probability that the outcome of the trial would have been different because the victim's account of the incident (as revealed at the postconviction hearing) was largely consistent with Lacey's testimony, the chief witness against Meyer. Lacey's testimony covered a wide range of topics, many of which the victim did not address because she had no knowledge of them.

¶ 16    Lacey testified in detail about Meyer's planning of the crimes and how the crimes unfolded on scene. As relevant here, Lacey testified that only he, Alexander, and Harrison initially entered the victim's house. After the victim returned home, Lacey said Harrison and Alexander seized her at gunpoint and made her lie face down on the floor. Lacey testified that Meyer then entered the house wearing a red bandana over his face and asked the victim "where everything was at."

¶ 17    At the postconviction hearing, the victim testified that she saw two Black men in her house,[3] one of whom pointed a gun at her and forced her to lie down on the floor. She said she saw only those

---

[3] Meyer is not a Black man.

8

two people but heard "three or four" different voices in the house. As to the people whom she heard but did not see, the victim testified that they did not try to communicate with her. Finally, the victim said she had never seen Meyer before the hearing.

¶ 18 According to Meyer, the victim's testimony that she did not see him in the house would have been exculpatory at trial. We agree it would have been, to a limited extent. But the victim's account did not contradict Lacey's testimony, who never indicated that the victim saw Meyer. Instead, Lacey testified that Meyer did not enter the house until after the victim was forced to lie face down on the floor *and* that Meyer was wearing a bandana over his face. As the district court aptly put it, "Lacey's testimony placed [Meyer] in [the] [v]ictim's home yet out of sight of [the] [v]ictim." In fact, the victim's account that she was forced to lie on the floor and that she heard some people whom she did not see was consistent with Lacey's testimony about what happened.

¶ 19 As best we can tell, only one aspect of the victim's testimony contradicted Lacey's testimony. Lacey testified that Meyer asked the victim "where everything was at" after he entered the house.

But the victim testified that none of the people whom she heard but did not see tried to communicate with her.

¶ 20 We cannot conclude that this single discrepancy between Lacey's testimony at trial and the victim's testimony at the postconviction hearing established a reasonable probability that the trial's outcome would have been different if the victim had testified at trial.[4] The only relevant import would have been to impeach Lacey's testimony, but the impeachment would have related only to one detail of the entire episode, and the defense otherwise impeached Lacey's testimony extensively.

¶ 21 For instance, on cross-examination, defense counsel pointed out that (1) Lacey had been previously convicted of attempted robbery; (2) Lacey refused to speak with the prosecution until he received a favorable plea deal; and (3) some aspects of Lacey's testimony were inconsistent with his earlier statements to police.

---

[4] Meyer argues that, according to a document produced in discovery before trial, the victim identified Lacey and Alexander as the men who threatened her with a gun and kidnapped her. Meyer says this information would have conflicted with Lacey's testimony identifying Harrison and Alexander as the assailants. At the postconviction hearing, however, the victim did not identify who threatened her with a gun and kidnapped her. Therefore, her testimony did not contradict Lacey's account on this point.

Defense counsel also challenged Lacey's testimony based on contradictory statements Lacey allegedly made to an inmate while in prison, and that inmate was also called to testify. In light of this considerable impeachment of Lacey's credibility, we are not convinced that a single contradictory statement from the victim would have swayed the jury's verdict in a meaningful way — especially given that the victim's testimony would not have excluded Meyer's presence in her home. *Cf. Margerum v. People*, 2019 CO 100, ¶ 16 (concluding that the district court's error in limiting impeachment of a witness was harmless, in part because the jury received important other evidence bearing on the witness's credibility).

¶ 22 Reenforcing our conclusion is the fact that the victim's account did not contradict Lacey's testimony that Meyer was the "mastermind" of the crimes. Her statements did nothing to challenge Lacey's testimony that Meyer planned the crimes. And as the district court noted, other physical evidence corroborated Lacey's version of events. For example, gloves and a prybar were found in Meyer's van, and gloves and a red bandana that contained traces of Meyer's DNA were found near the victim's house.

¶ 23    Accordingly, we conclude that Meyer did not show that he was prejudiced by his trial counsel's decision not to further investigate the victim or call her as a witness at trial.

C.    Harrison

¶ 24    Next, Meyer contends that his counsel was ineffective for failing to investigate and call Harrison as a witness at trial. The district court denied this claim without a hearing. Because Meyer's allegations, even if true, do not show prejudice from counsel's performance, we conclude that the court's ruling was correct.

¶ 25    In his Rule 35(c) motion, Meyer contended that Harrison would have contradicted Lacey's trial testimony. For example, Meyer claimed that Harrison would have testified to the following:

- The men originally intended to buy marijuana from the victim, not to rob her.

- Harrison believed that it was Lacey's idea to break into the victim's home.

- Harrison did not see the victim come home, nor did he talk to Meyer about her.

- Harrison did not see Lacey and Alexander take the victim and her children to the basement.

- Meyer entered the house but did not see or speak with the victim.

¶ 26    The district court decided that Meyer did not sufficiently allege deficient performance or prejudice in counsel's failing to investigate or present Harrison's alleged account at trial.  The court noted that evidence admitted at trial showed that Meyer had sought to communicate with Harrison in an apparent attempt to influence his potential testimony at trial.  Specifically, Meyer had written a letter to a third party asking them to contact Harrison and give Harrison a version of the incident that implicated Lacey and exculpated Meyer.  The court concluded that calling Harrison to testify at trial would have further highlighted Meyer's attempts to influence Harrison's testimony, thus undermining Meyer's defense.  In addition, the court determined that, even if Harrison had testified, his testimony would have been "thoroughly discredited" and that there was "no reasonable probability that his testimony would have produced a different result."

¶ 27    Like the district court, we find significant the evidence showing that Meyer attempted to influence Harrison's testimony — an attempt to give Harrison a version of the incident to "drill . . .

13

into his head." Meyer's version conveniently inculpated Lacey, while minimizing Meyer's involvement. Although Meyer argues that his letter attempting to influence Harrison was not received by the intended recipient, the testimony that Harrison would have given at trial (as alleged in Meyer's postconviction motion) largely matched the version of events that Meyer sought to drill into Harrison's head before trial.

¶ 28 Moreover, the evidence of the burglary tools found in Meyer's van, a receipt for purchase of the burglary tools, and gloves and a bandana with Meyer's DNA on them would have cast serious doubt on any testimony by Harrison that the initial plan was merely to buy drugs from the victim (not to rob her) and that Lacey came up with the burglary plan only after they discovered that the victim was not home. So, given the powerful evidence undermining Harrison's credibility, we agree with the district court that there is no reasonable probability that the jury would have been swayed by Harrison's testimony.

¶ 29 Additionally, Harrison's alleged testimony would not have been entirely favorable to Meyer. According to the postconviction motion, Harrison would have placed Meyer *inside* the victim's home —

where his accomplices brandished a weapon and kidnapped the victim. And Harrison's testimony would have emphasized for the jury Meyer's attempt to influence Harrison, further suggesting Meyer's consciousness of guilt.

¶ 30    Given all this, we conclude that Meyer's allegations about Harrison fail the prejudice prong of the *Strickland* test.

### D.    Plea Negotiations

¶ 31    Meyer contends that his trial counsel provided ineffective assistance with respect to a possible plea bargain with the prosecution. Again, we disagree, but this time we conclude that Meyer did not sufficiently allege deficient performance.

¶ 32    In his Rule 35(c) motion, Meyer alleged that his counsel contacted the prosecution in November 2010 with an offer in which Meyer would "plead guilty to the burglary charge in a 4-24 year [sentencing] range, COV [crime of violence]." According to the motion, the prosecutor rejected the offer, was difficult to negotiate with, and was "generally not interested in plea negotiations because he thought [Meyer] was the 'mastermind' of the crimes." Meyer also alleged that his counsel recalled later receiving a plea offer "in the range of 30 years," but Meyer rejected the offer. And after he was

convicted but before the habitual criminal adjudication, Meyer received another plea offer that included a forty-two-year sentence (less than half the sentence he eventually received), but he also rejected that offer because he did not want to waive his right to appeal.[5]

¶ 33    A defendant's right to effective assistance of counsel extends to the plea-bargaining process. *Missouri v. Frye*, 566 U.S. 134, 144 (2012). Thus, a claim alleging ineffective assistance during plea negotiations is subject to *Strickland*'s two-part analysis. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

¶ 34    Courts have recognized ineffective assistance claims regarding plea negotiations in a few contexts: (1) counsel's failure to initiate plea negotiations; (2) counsel's failure to convey an actual plea offer to the defendant; and (3) counsel's erroneous or incomplete advice about a plea offer. *See People v. Delgado*, 2019 COA 55, ¶¶ 16-18; *Sifuentes*, ¶¶ 17-18; *People v. Sherman*, 172 P.3d 911, 913-14 (Colo. App. 2006). Meyer's counsel was not deficient under any of these theories. According to Meyer's allegations, his counsel initiated plea

---

[5] Given his reason for rejecting the plea offer, it is questionable whether Meyer would have accepted *any* plea deal.

negotiations and later conveyed the prosecution's plea offers to Meyer. And Meyer did not allege that his counsel gave him inadequate advice about any plea offer.

¶ 35    Instead, Meyer alleged that his counsel was constitutionally deficient because his counsel did not give so-called mitigating information to the prosecution in hopes of securing a plea offer better than the two offers that Meyer rejected. Meyer cites no authority accepting this novel theory of ineffective assistance of counsel in plea negotiations. The one case he cites about a failure to present mitigating information concerned the sentencing stage of a case. *See Dunlap*, 173 P.3d at 1063.

¶ 36    Absent any authority holding that defense counsel performs deficiently by not presenting mitigating information to the prosecution in hopes of receiving a plea offer better than those the defendant rejected — and given that we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" — we conclude that Meyer's allegations (even if true) do not show deficient performance by his counsel. *Id.* (citation omitted). Our decision is supported by the fact that most of the allegedly mitigating information identified by

17

Meyer either had nothing to do with the charged incident (it dealt with his childhood abuse) or was already possessed by the prosecution because it was included in the discovery materials.

¶ 37 Moreover, Meyer did not allege in his Crim. P. 35(c) motion that he had informed his trial counsel of his childhood abuse, much less that he had authorized his counsel to share those personal details with the prosecution. "Trial counsel's alleged failure to investigate or present mitigating evidence does not constitute ineffective assistance 'when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself.'" *People v. Rodriguez*, 914 P.2d 230, 295 (Colo. 1996) (citation omitted); *see also Dooley v. Petsock*, 816 F.2d 885, 890-91 (3d Cir. 1987) (holding that "trial counsel cannot be ineffective for failing to raise claims to which his client has neglected to supply the essential underlying facts . . . ; clairvoyance is not required of effective trial counsel").

¶ 38 Therefore, we conclude that the district court properly denied this claim without a hearing.

## III.   Proportionality Review

¶ 39    Meyer maintains that the district court erred by rejecting his request for another review of his sentence for constitutional proportionality.  He is mistaken in light of Rule 35(c)(3)(VII), which provides that, with some exceptions, a court "shall deny any claim that could have been presented in an appeal previously brought."

### A.   Additional History

¶ 40    Before sentencing, Meyer sought a proportionality review of the statutorily mandated sentence.  After an abbreviated review, the trial court concluded that the sentence was not unconstitutionally disproportionate to Meyer's crimes.  He did not challenge that ruling in his direct appeal.

¶ 41    In his postconviction motion, however, Meyer alleged that his sentence is "grossly disproportionate and unconstitutional" and that he is entitled to a proportionality review of his sentence.  He did not mention Rule 35(c)(3)(VII) or cite an exception to that provision.  In its response, the prosecution invoked Rule 35(c)(3)(VII), but Meyer again failed to address that provision in his reply.

¶ 42    The district court rejected Meyer's request for a proportionality review because it was procedurally barred by Rule 35(c)(3)(VII).

## B.    Analysis

¶ 43    On its face, Rule 35(c)(3)(VII) bars Meyer's request for a proportionality review of his sentences because he could have raised the issue on direct appeal but did not do so. *See People v. McDonald*, 2023 COA 23, ¶¶ 8, 24 (concluding that Rule 35(c)'s bars on successive claims apply to a sentencing proportionality claim), (*cert. granted* Nov. 14, 2023). On appeal, Meyer concedes that a postconviction request for a proportionality review "is subject to the provisions of Crim. P. 35(c)," but he then says, "there is a question of whether a claim for postconviction relief under the Eighth Amendment can ever be considered successive." To the extent he means to challenge the reasoning of *McDonald*, we reject the challenge because we find that decision persuasive.

¶ 44    Meyer also contends that two exceptions to the procedural bar apply to his claim: Rule 35(c)(3)(VII)(c) (section VII(c)) and Rule 35(c)(3)(VII)(e) (section VII(e)). The People answer that this contention is not properly before us because Meyer did not raise any such exceptions in his postconviction motion or reply. *See*

20

*DePineda v. Price*, 915 P.2d 1278, 1280 (Colo. 1996) ("Issues not raised before the district court in a motion for postconviction relief will not be considered on appeal of the denial of that motion.").

¶ 45     Regarding section VII(c), we disagree with the People because Meyer relied on that provision in substance even though he did not cite it.  Section VII(c) excepts from the procedural bar "[a]ny claim based on a new rule of constitutional law that was previously unavailable, if that rule should be applied retroactively to cases on collateral review."  In his postconviction motion, Meyer relied on *Wells-Yates*, a decision announced after his convictions became final.  He argued that "[i]n *Wells-Yates*, our supreme court created a new rule related to Eighth Amendment proportionality review and otherwise clarified the doctrine."  Thus, Meyer essentially argued that the district court should retroactively apply to his case the new rule of constitutional law announced in *Wells-Yates*.

¶ 46     But, while Meyer adequately raised section VII(c), that exception does not apply to his claim.  As held in *McDonald*, "to the extent *Wells-Yates* announced new constitutional rules, those rules are procedural and don't apply retroactively."  *McDonald*, ¶ 2.  To reiterate, we follow *McDonald* because it is well reasoned.

21

¶ 47    Regarding section VII(e), we agree with the People that Meyer did not rely on it in his motion or reply.  Section VII(e) excepts from the procedural bar "[a]ny claim where an objective factor, external to the defense and not attributable to the defendant, made raising the claim impracticable."  But Meyer did not cite section VII(e) or an objective factor that made raising his proportionality claim impracticable in his direct appeal.  Instead, he identified a new case that, in his view, strengthened his proportionality claim — a claim that he had raised before his sentencing and a claim that defendants have raised for years well before *Well-Yates*.  *See, e.g.*, *Solem v. Helm*, 463 U.S. 277, 284 (1983).  Therefore, Meyer's allegation that section VII(e) excepts his claim from the procedural bar is not properly us.  *See DePineda*, 915 P.2d at 1280; *People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review.").

¶ 48    In any event, even if the applicability of section VII(e) were properly before us, we would reject Meyer's reliance on that provision.  In his view, section VII(e) applies to a claim relying on a

22

change in the law announced after a defendant's conviction became final *even if* the change should not be applied retroactively under the proper retroactivity analysis. Accepting Meyer's view of section VII(e) would render section VII(c) superfluous, even a nullity. Therefore, we cannot accept his interpretation. *See People v. Weeks*, 2021 CO 75, ¶ 32 ("[W]e must avoid interpretations that render any provision in a statute superfluous.").

¶ 49 As a result, we conclude that the district court properly denied Meyer's claim as successive under Rule 35(c)(3)(VII).

## IV. Conclusion

¶ 50 The order is affirmed.

JUDGE DUNN and JUDGE RICHMAN concur.